| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** <br> **DISTRICT OF NEW JERSEY** <br> **Caption in Compliance with D.N.J. LBR 9004-1(b)** <br><br> Robert J. Feinstein, Esq. (admitted *pro hac vice*) <br> Bradford J. Sandler, Esq. <br> Paul J. Labov, Esq. <br> Colin R. Robinson, Esq. <br> PACHULSKI STANG ZIEHL & JONES LLP <br> 780 Third Avenue, 34th Floor <br> New York, NY 10017 <br> Telephone: (212) 561-7700 <br> rfeinstein@pszjlaw.com <br> bsandler@pszjlaw.com <br> plabov@pszjlaw.com <br> crobinson@pszjlaw.com <br><br> Peter O. Larsen, Esq. (*pro hac vice* forthcoming) <br> Raye Elliott, Esq. (*pro hac vice* forthcoming) <br> AKERMAN LLP <br> 50 North Laura Street, Suite 3100 <br> Jacksonville, FL 32202 <br> Telephone: (904) 798-3700 <br> peter.larsen@akerman.com <br> raye.elliott@akerman.com <br><br> *Counsel to the Plan Administrator* | |
| In re: <br><br> 20230930-DK-BUTTERFLY-1, INC. f/k/a Bed Bath & Beyond, Inc., *et.al.*,[1] <br><br>    Debtors. | Chapter 11 <br><br> Case No. 23-13359(VFP) <br><br> (Jointly Administered) |
| MICHAEL GOLDBERG, as Plan Administrator for 20230930-DK-BUTTERFLY-1, INC. f/k/a Bed Bath & Beyond, Inc., <br>    Plaintiff, <br> v. <br> NEW JERSEY ECONOMIC DEVELOPMENT AUTHORITY, <br>    Defendant. | Adv. No. **Refer to Summons** |

---

[1] The last four digits of Debtor Bed Bath & Beyond, Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtor's claims and noticing agent at https://restructuring.ra.kroll.com/bbby/.

4862-3531-0789.1 08728.003

## COMPLAINT

Michael Goldberg, in his capacity as Plan Administrator (the "Plan Administrator" or "Plaintiff") for 20230930-DK-Butterfly-1, Inc. f/k/a Bed Bath and Beyond, Inc.[2] and affiliated debtors (the "Debtors"), by and through undersigned counsel, files this adversary complaint against the New Jersey Economic Development Authority (the "NJEDA") and alleges as follows:

### Nature of the Action

1. The Plan Administrator brings this action against Defendant to recover amounts due and owing from Defendant based on tax credits owed to the Debtors. The Trustee asserts various theories of recovery, including turnover of property of the bankruptcy estates and breach of contract.

### The Parties

2. The Plan Administrator is the sole representative of the Debtors and assumed responsibility for collecting assets of the bankruptcy estate, as more fully set forth in the Debtors' confirmed Chapter 11 Plan as discussed below.

3. Defendant, NJEDA, is a body corporate and politic organized and existing under the authority of N.J.S.A. § 34:1B-1, *et. seq*., established in, but not of, the New Jersey Department of the Treasury.

### Jurisdiction and Venue

4. The Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 505(a).

5. This is a core proceeding under 28 U.S.C. § 157(b).

---

[2] Pursuant to the Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond, Inc. which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond, Inc." was changed to 20230930-DK-Butterfly, Inc.

6.  Venue of these chapter 11 cases and this adversary proceeding in this district and before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

7.  The statutory and legal predicates for relief requested by this Complaint are sections 105, 505, 541, and 542 of title 11, United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 7001, *et. seq.*

**Factual Background**

A.  **General Case Background**

8.  On April 23, 2023, (the "Petition Date"), each of the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continued to operate their businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code until the Effective Date of the Plan (each, as defined below). No trustee or examiner has been appointed in this case.

9.  On September 14, 2023 (the "Confirmation Date"), the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Doc. 2172] (the "Confirmation Order"), confirming the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Doc. 2160] (as amended, the "Plan").

10. On September 29, 2023, the effective date of the Plan occurred (the "Effective Date"). *See* Docket No. 2311. On the Effective Date, the Plan Administrator became the sole representative of the Wind Down Debtors and assumed responsibility for, *inter alia,* investigating, prosecuting and compromising any and all of the Wind Down Debtors' claims and causes of action. *See, e.g.,* Plan at Art. IV.F, VII.A.

B.     **Tax Credits Owed by NJEDA**

11.    Prior to the commencement of these bankruptcy cases, the Debtors were leading retailers throughout the United States.

12.    On or about December 4, 2006, Christmas Tree Shops, Inc.,[3] which was formerly a wholly owned subsidiary of the Debtor, formerly known as Bed Bath & Beyond, Inc. ("BBB"), entered into a BEIP Grant Agreement (the "2006 BEIP Agreement") a copy of which is attached hereto and incorporated herein as Exhibit A. BBB was subsequently added as a party to the 2006 BEIP Agreement.

13.    The 2006 BEIP Agreement was an agreement by which the NJEDA, in order to promote growth and job development in New Jersey, induced companies such as BBB to locate and create jobs in New Jersey that would generate substantial payroll, income and other tax revenue to the State of New Jersey in exchange for economic credits and incentives.

14.    If the NJEDA had not promised the credits and incentives set forth in the 2006 BEIP Agreement, BBB would not have invested in or created the level of employment, jobs and resulting payroll tax revenue to the State of New Jersey that it did in reliance on the promised credits and incentives.

15.    The 2006 BEIP Agreement provided that the NJEDA would pay BBB monetary grants in exchange for creating and maintaining new jobs in the State of New Jersey.

16.    On July 25, 2011, BBB, and the Debtors formerly known as Bed Bath & Beyond of California LLC (now known as 20230930Butterfly-36), LLC, Liberty Procurement Company (formerly known as Bed Bath & Beyond Procurement Co.), BBB Value Services, Inc., now known as 20230930Butterfly-35, Inc., Buy Buy Baby Stores, Inc., Harmon Stores, Inc., and Christmas

---

[3] Christmas Tree Shops, Inc. was sold by BBB on November 12, 2020 and is therefore not a debtor in this bankruptcy case.

Tree Shops, Inc. (collectively and together with BBB, the "BEIP Debtors") entered into a BEIP Grant Agreement (the "2011 BEIP Agreement") with NJEDA, a copy of which is attached hereto and incorporated herein as Exhibit B.

17. The 2011 BEIP Agreement provided for NJEDA to pay the BEIP Debtors monetary grants in exchange for creating and maintaining new jobs in the State of New Jersey.

18. The 2011 BEIP Agreement at section 4.D. provides that the grant payments would be paid to the BEIP Debtors on a yearly basis upon submission of the required documents by the BEIP Debtors to the NJEDA and the certification by the State Treasurer.

19. Effective July 11, 2016, the BEIP Debtors and NJEDA executed an Amendment to Agreement for both the 2006 BEIP Agreement and the 2011 BEIP Agreement (the "BEIP Amendments") providing that the grant monetary payments owed under the 2006 and 2011 BEIP Agreements would be converted to "a tax credit against the tax liability otherwise due pursuant to section 5 of P.L. 1945, c. 162 (C.54:10A-5)" which is the New Jersey franchise tax. A copy of the BEIP Amendments are attached hereto and incorporated herein as Exhibit C.

20. The BEIP Amendments state that, "Grantee understands and agrees that the tax credit, including the amount thereof and when it may be used, shall be subject to all the terms and conditions of L. 2015, c. 194, as may be amended from time to time (the "Act"), and of the tax laws, as may be amended from time to time." L. 2015, c. 194 was an amendment to the Business Employment Incentive Program, N.J. Stat. Ann. § 34:1B-124, *et. seq,* providing for the option for grantees to convert their monetary grants to tax credits.

21. L. 2015, c. 194, in the form of an amendment to N.J.S.A. § 34:1B-129, also provided that the approved tax credits would be issued in staggered amounts over several years as follows:

    a. For grants accrued but not paid during calendar years 2008 through 2013, the tax credit shall be issued in five installments over a five year period beginning in the 2017 tax accounting or privilege period of the business in the following percentages: 30% of the accrued amount in year 1; 30% of the accrued amount in year 2; 20% of the accrued amount in year 3; 20% of the accrued amount in year 4; and 10% of the accrued amount in year 5.

    b. For grants accrued but not paid during calendar years 2014 and 2015, the tax credit shall be issued in four equal installments over a four year period beginning in the 2019 tax accounting or privilege period of the business.

    c. For grants accrued but not paid during calendar years 2016 and 2017, the tax credit shall be issued in three equal installments over a three year period beginning in the 2020 tax accounting or privilege period of the business.

    d. For grants accrued but not paid during calendar years 2018 and 2019, the tax credit shall be issued in two equal installments over a two year period beginning in the 2022 tax accounting or privilege period of the business.

22. The amendment to N.J.S.A. § 34:1B-129 further provides that the amount of the tax credit shall be applied against the franchise tax otherwise due and that if the credit exceeds the amount of tax liability otherwise due, the excess shall be an overpayment for purposes of the tax refund statute and grantee would be entitled to payment of a tax refund by the State of New Jersey.

23. N.J.S.A. § 34:1B-129 was further amended effective June 30, 2016, but retroactive to January 11, 2016, to reduce the amounts distributed for the grants accrued but not paid during calendar years 2008 through 2013. It states that for grants accrued but not paid during calendar years 2008 through 2013, the tax credit shall be issued in five installments over a five year period beginning in the 2017 tax accounting or privilege period of the business in the following percentages: 5% of the accrued amount in years 1 and 2; 20% of the accrued amount in year 3; and 25% of the accrued amount in years 4 and 5.

24. The BEIP Debtors met all of the job creation and other requirements for years 2007 through at least 2020.

25. The BEIP Debtors filed all applicable or required forms and documents and provided all applicable information to the NJEDA that were required under the applicable agreements to allow the NJEDA to determine the amount of the credits and payments due to the BEIP Debtors.

26. The NJEDA refused to certify most of the credits and payments for the applicable years even though certification is a ministerial process of reviewing the information provided by the BEIP Debtors.

27. Other than limited payments for years 2008-2010, the NJEDA has not paid the BEIP Debtors any money for years 2011-2021 notwithstanding the job creation and tax revenue creation by the BEIP Debtors during these periods.

28. The NJEDA has wholly failed to fulfill any of its monetary obligations under the 2006 and 2011 BEIP Agreements to provide the tax credits or payments to the BEIP Debtors for years 2011 and all subsequent years.

29. The NJEDA owes the BEIP Debtors a minimum amount of $19,317,396 (the "<u>BEIP Refund</u>") pursuant to the BEIP Agreement because the franchise tax obligations never exceeded the amount of the tax credits they were owed and therefore the BEIP Debtors were entitled to payment of tax refunds pursuant to N.J.S.A. § 34:1B-129.

30. The NJEDA has taken the position that the BEIP Debtors are not entitled to **any** payment under the BEIP Agreement because of the 2023 bankruptcy filings. Later, in informal discussions the NJEDA raised for the first time the position that the BEIP Debtors were allegedly in default of the BEIP Agreement at the end of 2021 because of the alleged failure to meet the required job numbers for two consecutive years.

31. The NJEDA never provided written notice of the BEIP Debtors' alleged default as required by section 14 of the 2011 BEIP Agreement which states, "Any one or more of the following shall constitute an event of default ("Event of Default") **if the default is not cured within thirty (30) days after written notice of the default** . . . ." (emphasis added).

32. Section 15 of the 2011 BEIP Agreement provides the remedies upon default, including the withholding of payments not yet paid, but, again, requires written notice to be given to the BEIP Debtors stating, "Upon the existence of any Event or Events of Default, the Grantor may, in its sole and absolute discretion, do any of the following, alone or in combination, **after having first given Grantee notice and opportunity to cure the default in accordance with Paragraph 14**." (emphasis added).

33. After these bankruptcy cases were filed and the BEIP Debtors began inquiring with the NJEDA regarding the status of the unpaid amounts, the NJEDA for the first time sent two letters dated August 7, 2023 (the "Termination Letters") providing written notice of the BEIP Debtors' default under the 2006 and 2011 BEIP Agreements for the 2020-2021 years only and allegedly terminating the Agreements. Copies of the Termination Letters are attached hereto and incorporated herein as Exhibit D.

## Count I
### (Turnover of Property Pursuant to 11 U.S.C. § 542)

34. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 27 above as if fully set forth herein.

35. Defendant is in possession, custody and control of the BEIP Refund in an amount not less than $19,317,396.

36. Defendant is not a custodian for the BEIP Refund.

37. The BEIP Refund constitutes a valid and existing debt, due and owing by Defendant to the Debtors.

38. The BEIP Refund is property of the Debtors' estates under § 541 and constitutes a debt that is matured, payable on demand, or payable on order.

39. Despite being requested to do so, Defendant has not turned over or paid the BEIP Refund to the Plaintiff.

40. Accordingly, pursuant to § 542, Defendant should be compelled to immediately turn over and deliver to the Plaintiff the BEIP Refund in an amount not less than $19,317,396 or such other amount determined to be due to the Debtor by the Court.

## Count II
### (Breach of Contract)

41. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 27 above as if fully set forth herein.

42. The BEIP Debtors and NJEDA entered into the BEIP Agreement providing for the payment of grants and subsequently tax credits and payments to the BEIP Debtors in exchange for creation of new jobs and the related or resulting tax revenue in New Jersey.

43. The BEIP Debtors fulfilled its obligations under the BEIP Agreement by creating the new jobs New Jersey and submitting all required reports and information to the NJEDA.

44. The NJEDA has failed to pay the BEIP Debtors the tax credits and payments as required by the BEIP Agreement.

45. The NJEDA's failure to pay the BEIP Debtors the tax credits and payments to which they are entitled has damaged the BEIP Debtors.

46. Accordingly, the BEIP Debtors are entitled to damages in an amount not less than $19,317,396 or such other amount determined to be due to the Debtor by the Court.

**Prayer for Relief**

WHEREFORE, Michael Goldberg, in his capacity as Plan Administrator respectfully requests and prays that the Court:

i. Pursuant to Count I, enter judgment requiring Defendant to immediately turn over and deliver to Plaintiff the BEIP Refund in an amount not less than $19,317,396 or such other amount determined to be due to the Debtor by the Court.; and

ii. Pursuant to Count II, enter judgment against Defendant for breach of contract and award the Plaintiff damages on account of Defendant's breach of the BEIP Agreement in an amount not less than $19,317,396 or such other amount determined to be due to the Debtor by the Court; and

iii. Award Plaintiff prejudgment interest at the applicable statutory or otherwise legally allowed applicable rate;

iv. Award Plaintiff costs, and expenses of this suit; and

v. Grant the Plaintiff such other and further relief the Court deems just.

*[Remainder of page intentionally left blank.]*

| | |
|---|---|
| Dated: June 3, 2024 | */s/ Paul J. Labov* |
| | Robert J. Feinstein, Esq. (admitted *pro hac vice*) |
| | Bradford J. Sandler, Esq. |
| | Paul J. Labov, Esq. |
| | Colin R. Robinson, Esq. |
| | **PACHULSKI STANG ZIEHL & JONES LLP** |
| | 780 Third Avenue, 34th Floor |
| | New York, NY 10017 |
| | Telephone:   (212) 561-7700 |
| | Facsimile:    (212) 561-7777 |
| | Email:           rfeinstein@pszjlaw.com |
| | bsandler@pszjlaw.com |
| | plabov@pszjlaw.com |
| | crobinson@pszjlaw.com |
| | |
| | and |
| | |
| | Peter O. Larsen, Esq. (*pro hac vice* forthcoming) |
| | Raye Elliott, Esq. (*pro hac vice* forthcoming) |
| | **AKERMAN LLP** |
| | 50 North Laura Street, Suite 3100 |
| | Jacksonville, FL 32202 |
| | Telephone:   (904) 798-3700 |
| | Facsimile:    (904) 798-3730 |
| | Email:           peter.larsen@akerman.com |
| | raye.elliott@akerman.com |
| | |
| | *Counsel to the Plan Administrator* |