## BEIP GRANT AGREEMENT

This BEIP Grant Agreement (hereinafter the "Agreement"), made as of this 25th day of July, 2011, by and between **BED BATH AND BEYOND, INC./BED BATH & BEYOND OF CALIFORNIA LIMITED LIABILITY COMPANY/BED BATH & BEYOND PROCUREMENT CO./BBB VALUE SERVICES INC./BUY BUY BABY STORES INC./HARMON STORES INC./CHRISTMAS TREE SHOPS INC.,** having their principal offices at 650 Liberty Ave., Union Township, Union County, New Jersey 07083 (hereinafter collectively the "Grantee"), and the New Jersey Economic Development Authority, a body corporate and politic organized and existing under the authority of N.J.S.A. 34:1B-1 et seq., having its offices at 36 West State Street, PO Box 990, Trenton, New Jersey 08625-0990 (hereinafter referred to as "Grantor"), the above entities being (hereinafter referred to as the "Parties").

### WITNESSETH:

WHEREAS, in order to foster job creation in the State, the Business Employment Incentive Program Act, N.J.S.A. 34:1B-120 et. seq. as amended on September 2, 2003 pursuant to P.L. 2003 c.166 (hereinafter the "Act"), authorizes the Grantor to enter into agreements with businesses to provide Business Employment Incentive Grants in accordance with the provisions of the Act and the implementing regulations, N.J.A.C. 19:31-10 et seq. (hereinafter "Regulations"); and,

WHEREAS, Grantee has proposed to relocate to and/or to create or expand in New Jersey a project which is described in detail in **Exhibit A** hereto (hereinafter the "Project"), which project will create new employment opportunities in the State and will pay wages subject to the provisions of the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 et seq. (hereinafter the "Tax Act");

WHEREAS, Grantee has represented to Grantor that, no later than the expiration date of the Base Years of this Agreement, it shall have created at least 340 Eligible Positions. (All capitalized terms in this recital are as defined in Paragraph 1 of this Agreement);

WHEREAS, Grantor has found, on the basis of the information contained in Grantee's application for a Business Employment Incentive Grant, and any other information provided by Grantee in support of its application:

a. The Project will create, during the term of this Agreement, a net increase in employment in the State of New Jersey;

b. The Project is economically sound and will benefit the people of New Jersey by increasing opportunities for employment and by strengthening New Jersey's economy;

c. Receipt of the Business Employment Incentive Grant is a material factor in the Grantee's decision to go forward with the Project; and,

WHEREAS, Grantor has determined to give Grantee a Business Employment Incentive Grant, in accordance with the requirements of the Act and Regulations and in accordance with the terms and conditions of this Agreement.

NOW THEREFORE, in consideration of the mutual promises and covenants made herein, it is agreed as follows:

**1.**    **Definitions**.    The following terms shall have the following meaning when used in this Agreement, unless the context clearly indicates otherwise.

"**Base Employment Number**" shall mean the number of employees the Grantee and all affiliates of Grantee have employed in the State of New Jersey at the time of application for the Grant as listed on the attached **Exhibit A**;

"**Base Years**" mean the first two complete calendar years following the Effective Date of this Agreement, unless significant construction/renovation of the Project requires a certificate of occupancy to be awarded prior to occupancy of the Project Site, in which event "Base Years" shall mean the first two complete calendar years following the date that the municipality in which the Project is located issues a certificate of occupancy for the Project;

"**Business Employment Incentive Grant**" means a grant given pursuant to the Act, subject to the requirements of the Act and of the Regulations;

"**Commitment Duration**" means 1.5 times the term of the Grant, beginning on the Eligibility Determination Date and ending 15 years later;

"**Consumer Price Index**" means the index so defined in the Regulations (NJAC19:31-10.2) as such term may be amended from time to time and which at the time of the execution of the Agreement is: the consumer price index developed by the United States Bureau of Labor Statistics for Urban Wage Earners and Clerical Workers using the Metropolitan Statistical Area (MSA) by county as developed by the United States Census Bureau in its most recent census. The MSA by county for New Jersey divides the State into northern and southern areas. If the project is located in an area designated as a northern county, the northern index shall be used and if the project location is in an area designated as a southern county, the southern index shall be used.

"**Director**" means the Director of the Division of Taxation;

"**Division**" means the Division of Taxation in the Department of the Treasury;

"**Effective Date**" means the date of approval of the Grant by Grantor's governing board, May 13, 2011;

"**Eligibility Determination Date**" means the date the Minimum Eligibility Threshold is reached;

"**Eligible Position**" means a new full-time position created by the Grantee in New Jersey or transferred from another state by the Grantee during the Base Years or subsequent years of a grant. For grants awarded on or after July 1, 2003, eligible position includes only a position for which a business provides employee health benefits under a group health plan as defined under section 14 of P.L. 1997, c.146 (C.17B:27-54), a health benefits plan as defined under section 1 of P.L. 1992, c.162 (C.17B:27A-17), or a policy or contract of health insurance covering more than one person issued pursuant to Article 2 of Title 17B of the New Jersey Statutes. An Eligible Position shall also include a position occupied by a resident of this State whose position is relocated to this State from another state but who does not qualify as a New Employee because prior to relocation his wages or his distributive share of income from a gain, from a loss or deduction, or his guaranteed payments or any combination thereof, prior to relocation, were not subject to income taxes imposed by the state or municipality in which the position was previously located. An Eligible Position shall also include a position occupied by a resident of another state whose position is relocated to or created in this State but whose wages or distributive share of income from a gain, from a loss or deduction, or guaranteed payments or any combination thereof, prior to relocation, were not subject to income taxes imposed by the state in which the position was previously located

because the state does not assess a personal income tax on any employee located therein. An Eligible Position shall also include a position occupied by a resident of another state whose position is relocated to or created in this State but whose income is not subject to the New Jersey gross tax pursuant to N.J.S.A. 54A:1-1 et seq.  An Eligible Position shall not include any position located within New Jersey, which, within a period either three months prior to the business' application for a grant under the Act or six months after the date of application, ceases to exist or be located within New Jersey;

"**Final Grant Period**" means the period of the calendar year in which the Grant Term expires that commences January 1 of that calendar year and concludes the day before the 10th anniversary of the Eligibility Determination Date;

"**Full-Time Employee**" means any person who is employed for consideration for at least 35 hours per week, or who renders any other standard of service generally accepted by custom or practice as full-time employment, whose wages are subject to withholding, as provided in the New Jersey Gross Income Tax Act (N.J.S.A. 54A:1-1 et seq.) or who is a partner of an eligible partnership, who works for the partnership for at least 35 hours a week, or who renders any other standard of service generally accepted by custom or practice as full-time employment, and whose distributive share of income, gain, loss or deduction, or whose guaranteed payments, or any combination thereof, is subject to the payment of estimated taxes,  as provided in the New Jersey Gross Income Tax Act (N.J.S.A. 54A:1-1 et seq.) and who is certified by the Grantee to be employed in a permanent position. "Full-time employee" shall not include any person who works as an independent contractor or on a consulting basis for the Grantee;

"**Grant**" means the aggregate amount of all monies paid, or to be paid, by Grantor to Grantee pursuant to Paragraph 4 of this Agreement;

"**Grant Payment**" means the portion of the Grant that is paid for, and with respect to, a given Grant Year;

"**Grant Term**" means the period beginning on the Eligibility Determination Date and ending 10 years later provided that if multiple Project locations were approved for this Grant, the Grant Term for each location shall end 10 years after the Eligibility Determination Date for the first location to satisfy the Minimum Eligibility Threshold;

"**Grant Year**" means each calendar year or portion thereof in which the Grant Term runs;

"**Initial Grant Period**" means that period of the calendar year in which the Minimum Eligibility Threshold is reached, commencing the date on which such threshold is reached and concluding December 31 of that calendar year;

"**Minimum Eligibility Threshold**" means:  a) in the case of a Grantee which is not a Targeted Industry, employment of at least 25 Full-Time Employees in Eligible Positions; or,  b) in the case of a Grantee who is a Targeted Industry, employment of at least 10 Full-Time Employees in Eligible Positions.  The Minimum Eligibility Threshold shall apply separately to each Project Location listed in Exhibit A;

"**New Employee**" means a Full-Time Employee first employed in an Eligible Position by the Grantee at the Project which is the subject of an agreement or who renders any other standard of service generally accepted by custom or practice as full-time employment and whose distributive share of income, gain, loss, or deduction, or whose guaranteed payments, or any combination thereof, is subject to the payment of estimated taxes, as provided in the New Jersey Gross Income Tax Act, (N.J.S.A. 54A: 1-1 et seq.); except that such a New Jersey resident whose position is relocated to this State shall not be classified as a New Employee unless his or her wages prior to the relocation were subject to income taxes imposed by the state or municipality in which the position was previously located.   The Parties acknowledge that New Employee shall include employees relocating to New Jersey from a state that does not assess a personal income tax on any employee located therein.   New Employee also may include an employee rehired or called back from a bona fide layoff during or following the Base Years to a vacant position previously held by that employee or to a new position established during or following the Base Years. New Employee shall not include: any person who was previously employed in New Jersey by the Grantee or by a related person as defined in N.J.S.A. 54:10A-5.5 if the employee is transferred to the Project unless the employee's position at his or her previous employer is filled by a new employee, provided, however, that New Employee shall include any person who was previously co-employed in New Jersey by a Professional Employer Organization as defined in and in accordance with N.J.S.A. 34:8-67 et seq. (hereinafter "PEO") and a business if the employee is co-employed by a PEO and a different business.   New Employee shall also not include a child, grandchild, parent, or spouse of an individual associated with the Grantee who has direct or indirect ownership of at least 15 percent of the profits, capital or value of the Grantee.   New Employee shall also include an employee whose position is relocated to this State but whose income is not subject to the New Jersey gross income tax pursuant to N.J.S.A. 54A:1-1 et seq.   In addition, if Grantee merges, consolidates or otherwise combines with another business entity or entities and the resulting company employs former employees in Eligible Positions on the Project, then such employees shall be deemed New Employees upon approval of the Grantor;

"**New Employment Commitment**" means the number of New Employees actually hired at the end of the Base Years, however, in no case shall it exceed the projected New Employment Commitment stated in **Exhibit A** which Grantee has represented it will employ and maintain in Eligible Positions during and throughout the Commitment Duration;

"**PEO**" means a Professional Employer Organization as defined in N.J.S.A. 34:8-67 et seq.;

"**Relocated New Employee**" means any person who meets the definition of New Employee by virtue of satisfying the following requirements:  (1) such person was employed by Grantee outside of New Jersey and had his or her position relocated to the Project after the Effective Date; (2) the wages of such person have become subject to withholding under the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 et seq., except as otherwise provided in this Agreement, and  (3) such person's wages immediately prior to relocation were subject to income taxes by the state or municipality in which the position was previously located.   The Parties acknowledge that Relocated New Employee shall include employees relocating to New Jersey from a state that does not assess a personal income tax on any employee located therein.

"**State**" means the State of New Jersey;

"**Targeted Industry**" means a business engaged in the field or fields of advanced computing, advanced materials, biotechnology, electronic device technology, environmental technology or medical device technology, as these fields and companies engaged in these fields are defined in the Act;

"**Withholdings**" means the amount withheld by the Grantee from the wages of New Employees pursuant to the "New Jersey Gross Income Tax Act," N.J.S.A. 54A:1-1 et seq., and, if the New Employee is an employee whose position has moved to New Jersey but whose income is not subject to the New Jersey gross income tax pursuant to N.J.S.A. 54A:1-1 et seq., the amount of withholding that would occur if the employee were to move to New Jersey minus the following amounts, if and as applicable:

1. Withholdings taken out of such New Employee's wages by Grantee, at his or her request, to the extent same exceeds the amount of the New Jersey gross income taxes ("NJGIT") that are paid or payable under the Tax Act on account of wages earned by him or her during the given Grant Year;

2. With respect to any Relocated New Employee, the amount of any NJGIT payable by such worker on account of wages earned in New Jersey, or arising from employment in New Jersey, during the calendar year immediately preceding the year of his or her relocation, or during the year of the relocation, if such worker was hired by Grantee that same year.  By way of example only, and not limiting the generality of the foregoing, this would include any NJGIT owed by a Relocated New Employee on account of income earned by such worker from sales made in New Jersey.

The amounts, if any, calculated under subparagraph 2 of this definition of Withholdings shall be a constant deduction each and every Grant Year from the New Employee's Withholdings for that period.

Withholdings shall not include amounts withheld by a business from stock options, money or other payments given to a New Employee pursuant to the termination of employment of the New Employee.  Withholdings shall include amounts withheld by a business from stock options, money or other payments given to a New Employee pursuant to a bonus for commencing employment or for services rendered by the New Employee.

2.      **Precondition for Grant.**  As a precondition to the right of Grantee to receive the Grant, Grantee must satisfy the Minimum Eligibility Threshold applicable to at least one of the Project locations listed on Exhibit A no later than the date of the expiration of the Base Years.  Once the Minimum Eligibility Threshold has been satisfied at any Project location listed on Exhibit A, this precondition will be satisfied; provided that there shall be no Grant Payments due or paid for any location at which Grantee has failed to reach and / or maintain the Minimum Eligibility Threshold.  In the event that Grantee fails to satisfy this precondition, this Agreement shall automatically terminate as of the date of such expiration, without the requirement or necessity of any notice from Grantor, written, or otherwise, and said Agreement shall thereafter be null and void, with no further rights or liabilities between the Parties, except for any rights or liabilities of the Parties arising under any provisions that are deemed hereunder to survive termination of this Agreement.

3.      **Reporting Requirements**.

A.      If and when Grantee should reach the Minimum Eligibility Threshold, it shall, no later than 30 days thereafter, notify Grantor in writing of that event, indicating the date and number of new employees.

5

B.      No later than March 1 of the year following the first Grant Year, the Grantee shall submit a detailed payroll report indicating all employment positions of the Grantee and the employees who filled those positions that were located in New Jersey and that ceased to exist or to be located in New Jersey within six (6) months after the date of application of the Grantee for the Grant.

C.      In order that Grantor may monitor Grantee's compliance with the provisions of the Act and with its progress in satisfying the Minimum Eligibility Threshold (hereafter referred to, from time to time, as, the "MET"), Grantee shall submit to Grantor, no later than March 1 of the year following the calendar year in which the MET is reached (the "Initial Report"), the following information and certifications with respect to the period of time commencing on the Effective Date and ending on the date the MET is reached (the "Initial Reporting Period"):

(Notwithstanding the foregoing, if the MET is not reached in the year that the Effective Date occurs, then, in lieu of the aforesaid reporting periods, Grantee shall submit the Initial Report with respect to each of the following periods, where applicable (collectively, the "Initial Reports"):  (1) the period commencing the Effective Date and running through December 31 of the year in which such Effective Date occurred;  (2) for each year thereafter in which the MET has not been reached, the period encompassing the full calendar year of such year; and, (3) for the year in which the MET is reached, the period commencing January 1 of such year and ending the day preceding the Eligibility Determination Date. (Such reporting periods shall be referred to singularly and collectively, as the "Initial Reporting Period", and the "Initial Reporting Periods", respectively.)   Each Initial Report shall be submitted to Grantor no later than March 1 of the year following the year in which the relevant period occurred).

1.      A copy of its New Jersey Corporation Business Tax Form, CBT-100 within thirty (30) days of filing;

2.      A certification in the form of the document attached hereto as **Exhibit B**, executed by an authorized officer or signatory of Grantee with binding authority, on behalf of Grantee: (i) stating that no New Employee is a child, grandchild, parent or spouse of an individual associated with Grantee who has direct or indirect ownership of at least 15% of the profits, capital, or value of Grantee; (ii) stating the total number of New Employees at the Project as of December 31 of the reporting year; (iii) stating the amounts, dates received and providers of all grants received by Grantee under State law, including any grant under the Business Retention and Relocation Assistance Act, P.L. 2004, c.65 as amended;  (iv) if Grantee is awaiting a grant award notification for any grant offered under State law, identifying the grant provider and the anticipated amount and date received; (v) certifying as accurate in all material respects, all documents, materials, and information submitted to Grantor for verification purposes pursuant to this Paragraph; and  (vi) certifying that the Grantee continues to pay health benefits to New Employees under a group plan, as defined in the Act.

D.      In order that the Grantor may verify Grantee's continued satisfaction and maintenance of MET during the Commitment Duration, Grantee shall submit to Grantor the information set forth below, such information to be submitted by the deadlines, and to pertain to the time periods, as follows:

(1) by March 1 of the year following the calendar year in which the MET is reached, with respect only, however, to that portion of such calendar year covering the period from the Eligibility Determination Date through to and including December 31 of such year and for any calendar years in which the Grantor requires, upon ninety (90) days written notice to the Grantee;

a.      A copy of its New Jersey Corporation Business Tax Form, CBT-100 within thirty (30) days of filing.

b.      A copy of the New Jersey tax form W-3 and for each New Employee whose income is not subject to the Tax Act a copy of the W-2 form.

6

c.      An Annual Progress Report for each Project location in Exhibit A in the form of the document attached hereto as **Exhibit C**, certified to be accurate by an authorized officer or signatory of Grantee with binding authority, certifying that the Grantee continues to pay health benefits to New Employees under a group plan, as defined in the Act and stating the following:

       i)     the number of New Employees at the Project;

      ii)     the amount of income tax Withholdings in connection with each New Employee for the preceding year;

     iii)     the aggregate annual payroll of the New Employees;

     iv)     the names of New Employees;

      v)     residence of New Employees, by city and state;

     vi)     the date each New Employee was hired by the Grantee and/or the date each New Employee began employment with respect to the Project;

    vii)     the annual salaries of each New Employee, including any overtime paid, bonuses and stock options;

   viii)     the average wage of the New Employees;

     ix)     a listing indicating the termination dates, if any, of the New Employees;

      x)     the social security numbers of each New Employee;

     xi)     any other information the Grantor deems appropriate and necessary for verification purposes.

    xii)     number of employees the Grantee is currently employing in New Jersey.

(2) By March 1 of each of the next 9 successive years, with respect to the full preceding calendar year; and, (3) by March 1 of the calendar year following the year in which the Final Grant Period occurs, with respect only, however, to that portion of such year covering the period from January 1 through to and including the date that the Final Grant Period expires:

a.      A copy of its New Jersey Corporation Business Tax Form, CBT-100 within thirty (30) days of filing.

b.      A copy of the New Jersey tax form W-3 and for each New Employee whose income is not subject to the Tax Act, a copy of the W-2 form.

c.      An Annual Progress Report for each Project location in Exhibit A in the form of the document attached hereto as **Exhibit C1**, certified to be accurate by an authorized officer or signatory of Grantee with binding authority, certifying that the Grantee continues to pay health benefits to Eligible Employees under a group plan, as defined in the Act and stating the following:

      i)     the total number of New Employees at the Project;

      ii)     the total amount of income tax Withholdings in connection with the New Employees;

     iii)     the total annual salaries of the New Employees, including bonuses and stock options attributable to bonuses;

     iv)     the average wage of the New Employees;

      v)     any other information the Grantor deems appropriate and necessary for verification purposes.

     vi)     number of employees the Grantee is currently employing in New Jersey.

E. Failure to submit the information required in Section 3D2 above by the time periods specified shall result in forfeiture of the grant payment for the applicable reporting year unless the Grantor determines that there are extenuating circumstances excusing the timely filing required herein. For purposes of this Section 3E, "extenuating circumstances" means the destruction of the business' payroll records due to a fire, earthquake, flood, acts of terrorism, infestation or the complete loss of the business' computer records.

4.    <u>Grant</u>.

A.    Grant Terms.    Subject to the Conditions Precedent and Subsequent set forth in Subparagraphs 4E and 4F hereof, and subject to the precondition set forth in Paragraph 2 hereof, Grantor hereby agrees to provide to Grantee, with respect to each Grant Year, a grant in an amount equal to the percentage of the Withholdings as calculated pursuant to 4B hereof for such Grant Year for the New Employees up to the New Employment Commitment.  In no case shall the aggregate amount of the Grant awarded exceed an average of $50,000 per New Employee for all New Employees over the term of the Grant.  The average for all New Employees over the term of grant shall be determined based on annual reports submitted by the applicant, certifying the number of New Employees. The Authority will review the certified reports annually to determine whether the applicant has reached or exceeded the $50,000 per New Employee limit.  To the extent that the applicant has received grant funds in excess of $50,000 per New Employee, the Authority will reduce the grant proportionally.

B.    The Grantor shall calculate the percentage of Withholdings to be paid to the Grantee by taking the actual number of New Employees for such Grant Year and applying it to the formula evaluation used at the time of approval of the Grant, as set forth in Exhibit F up to a maximum of 80% and subject to Section 4A hereof.

C.    In the event the Grantee creates in excess of the New Employment Commitment, the Grantor may, in its discretion, provide an adjustment to the Grant to include the lesser of (i) the dollar amount equal to the amount of the Withholdings paid for the additional Eligible Positions above the New Employment Commitment multiplied by the grant award percentage; or (ii) a dollar amount which shall be a 20 percent cap above the dollar amount of the withholdings attributed to the New Employment Commitment adjusted annually by the Consumer Price Index, with the exception of the following which, in the discretion of the Grantor, may receive the full dollar amount of Withholdings paid for the additional Eligible Positions multiplied by the grant award percentage:
(1) a business with a total of 100 employees or less at the time of application for the Grant;
(2) a business making significant leasehold improvements or renovations to accommodate additional growth at the project as determined by Grantor; or
(3) a manufacturing business making a significant capital investment such as investment in a new product line or model or providing sufficient evidence that it plans a significant increase in production from existing equipment, such as higher utilization rates and as determined by Grantor.

D.    Grant Payment Procedure.  Beginning the calendar year following completion of the Initial Grant Period, and continuing thereafter on an annual basis, to and including the year immediately following the calendar year in which the Final Grant Period occurred, Grantor shall, within thirty (30) days of its receipt of the State Treasurer's certification referred to in Paragraph 4E(2) hereof pertaining to the immediately preceding Grant Year, notify Grantee of such receipt.  No later than thirty (30) days following such notice Grantee shall deliver to Grantor a certificate in the form of the certification attached hereto as **Exhibit D** ("Certificate of Compliance"), which has been executed by an authorized officer or signatory of Grantee with binding authority, on its behalf, certifying that Grantee is, as of the date thereof, in full compliance with all the terms and conditions of this Agreement and that, upon due investigation and diligence, the authorized officer or signatory is not aware of the occurrence of any Event of Default that has not been cured.  Payment of the Grant with respect to such Grant Year shall be made by Grantor to Grantee within sixty (60) days after receipt of the Certificates of Compliance.  In the event Grantee has engaged a PEO pursuant to this Agreement, Grantee shall deliver to Grantor further Compliance Certificates in the form of the certificates attached to the PEO Agreement as Exhibits B and C.

8

E.      Conditions To Grant.  The obligation of Grantor to make the Grant Payment with respect to each and every Grant Year, and the right of Grantee to receive and retain same, shall be conditional upon satisfaction of each of the following conditions:

1.      The Legislature has appropriated monies for the Grant with respect to such Grant Year or the Grantor has issued bonds pursuant to the Act;

2.      The State Treasurer has certified the amount of the Withholdings for such Grant Year, as required by Section 10 of the Act;

3.      No Events of Default have occurred and remain uncured, unless all such defaults have been expressly waived by Grantor in writing, in its sole discretion;

4.      Grantee has delivered to Grantor the Certification of Compliance; and,

5.      No demand has been made by Grantor for recapture of any Grant Payment for any previous Grant Year.

F.      Conditions Subsequent.  The entitlement of Grantee to retain any Grant Payment previously received by it hereunder with respect to each and every Grant Year shall be conditional upon the continuous compliance by it with the Minimum Eligibility Threshold made by Grantee during the remainder of the Commitment Duration, unless expressly waived in writing by Grantor.

**5.      Certificate of Verification**.  The Director of the Division shall annually verify the amount of Withholdings reported by Grantee to Grantor pursuant to Paragraph 4 above, and, if believed to be accurate, shall issue a Certificate of Verification to the Grantor, stating all amounts have been verified. The amounts verified by the Director are subject to further audit and examination by the Director, at a later date during the Commitment Duration.

**6.      Covenants of Grantee**.  Grantee covenants and agrees that:

A.      It shall meet and satisfy the Minimum Eligibility Threshold no later than the expiration of the Base Years and continue to satisfy the Minimum Eligibility Threshold at all times up to the expiration of the Commitment Duration;

B.      It shall maintain at least 80% of the Base Employment Number at all times up to the expiration of the Commitment Duration.  The Grantor shall apply any job creation above the New Employment Commitment at the Project against any losses in the Base Employment Number when determining whether Grantee has fallen below 80% of the Base Employment Number; provided that no New Employees included in determining 80% of the Base Employment Number shall be included for payment under the Grant.

C.      The Grantee shall maintain a net increase of employees at the Project at all times up to the expiration of the Commitment Duration in an amount equivalent to the Minimum Eligibility Threshold.  When calculating the Minimum Eligibility Threshold, any reductions in the employment level of the non-eligible employees that existed prior to approval of the Grant, must be deducted from the amount of New Employees in Eligible Positions for each year of the Grant Term.

D.      Grantee shall at all times during the Base Years and during the Commitment Duration satisfy all eligibility criteria under the Act and Regulations upon which Grantor relied in determining to make the Grant.

E.      An annual servicing fee shall be paid to the Grantor by the Grantee and shall be deducted from the annual grant payment to the Grantee.  The servicing fee shall be set by regulation pursuant to Grantor's rules and regulations.

F.      Grantee shall notify Grantor if it closes operations at any of the locations set forth in Exhibit A.

G.      It is specifically understood and agreed that this Grant is cross-defaulted with any existing assistance and any new assistance provided by the Authority to the Recipient and/or any of its subsidiaries.

H.      In its application, the Grantee has set forth a description of all construction contemplated to be undertaken in connection with the Grant provided herein.  Such description includes any construction that the Grantee will undertake to fulfill any condition of receiving the Grant, including any contract to construct, renovate or otherwise prepare a facility for operations which will be necessary for the receipt of the Grant provided herein, unless otherwise excluded by law.  Grantee represents that such description is true and accurate as of the date hereof. All construction contracts regarding the Project Location must contain additional language as set forth in Authority Affirmative Action Addendum to Construction Contract. In addition, the general contractor must include said language in all subcontracts. Regulations, forms, guidance documents (including an Affirmative Action and Prevailing Wage program summary) are available at www.njeda.com/affirmativeaction, provided however, that this requirement shall not apply to construction commenced more than two years from the Grantee's first receipt of funds hereunder.

7.      **Representations and Warranties of Grantee**.

A.      Grantee has been duly organized and validly exists as a corporation, has power to enter into this Agreement and has authorized the taking of all action necessary to carry out and give effect to the transactions contemplated by this Agreement.

B.      To the best of the Grantee's knowledge, and upon due inquiry, there is no action or proceeding pending or threatened against the Grantee before any court or administrative agency that might adversely affect the ability of the Grantee to conduct the Project or to perform its obligations under this Agreement and all consents, authorizations, and approvals of governmental bodies or agencies required in connection with the conduct of the Project or with the performance of the Grantee's obligations under this Agreement have been obtained and will be obtained whenever required hereunder or by law.

C.      Neither the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement is prevented, limited by, or conflicts with or results in a breach of, the terms, conditions, or provisions of any corporate restrictions or any evidence of indebtedness, agreement, or instrument of whatever nature to which the Grantee is bound, or constitutes a default under any of the foregoing.

10

D.    All tax returns and reports of the Grantee required by law to be filed have been duly filed and all taxes, assessments, fees and other governmental charges upon Grantee or upon any of its respective properties, assets, income or franchises which are due and payable pursuant to any assessment received by the Grantee have been paid other than those which are presently payable without penalty or interest.  Nothing in this subparagraph is intended to preclude Grantee from exercising its lawful right to contest any tax, assessment, fee or other governmental charge.

E.    To the best of the Grantee's knowledge, and upon due inquiry, there have been no material adverse changes in the aggregate assets or aggregate liabilities or in the condition, financial or otherwise, of the Grantee from that set forth in the financial statements delivered to Grantor in connection with its application for the Grant.

F.    All statements, representations and warranties made by Grantee in its application to Grantor, and in any materials furnished in support of that application were true when made, are true, in all material respects, as of the date hereof, and shall remain and be true and correct during the term of this Agreement, it being understood by Grantee that all such statements, representations and warranties have been relied upon by Grantor as an inducement to make the Grant and shall continue to be relied upon by Grantee in administering the Grant.  Grantee further understands and agrees that, if, during the term of this Agreement, any such statements, representations and warranties become untrue or false, it shall have a duty to immediately notify the Grantor in writing of such fact.

G.    The principal office of Grantee is located at 650 Liberty Avenue Union NJ 07083 All of the Grantee's books and records relating to the Business Employment Incentive Program ("BEIP Program") shall be located at 650 Liberty Avenue Union NJ 07083 . The Grantee shall notify Grantor in writing of any change in the location of the Grantee's books and records relating to the BEIP Program prior to any such relocation.

H.    Grantee represents that it has at all times relevant to this Agreement been represented by advisors of its own selection, including, but not limited to, attorneys at law and/or certified public accountants; that it has not relied upon any statement, representation, warranty, agreement or information provided by Grantor; that it acknowledges that it is informed by its advisors of its respective rights, duties, and obligations with respect to the transaction which is the subject of this Agreement under all applicable laws, and that it has no set-offs, defenses or counterclaims against Grantor with respect to the transaction which is the subject of this Agreement.

I.    If during the duration of this Agreement the Grantee becomes aware of any facts, occurrences, information, statements, or events that render any of the foregoing representations or warranties herein untrue or materially misleading or incomplete, Grantee shall immediately notify Grantor in writing of such facts, occurrences, information, statements, or events.

J.    All information contained in **Exhibit E** attached hereto, including, but not limited to, a listing of names, job titles, and job locations of current employees in New Jersey as of the Effective Date, is complete and accurate.

K.    Grantee is not receiving and has not made application with the State of New Jersey for any other grant, except as stated in the application.  To the extent the Grantee has applied or will apply for a grant pursuant to N.J.A.C. 12A:2A-2.1 et seq. ("BRRAG STX Grant"), the job projections indicated in that application shall conform to the job projections in any BEIP application submitted by the Grantee.

L.      Receipt of the Grant is a material factor in the Grantee's decision to go forward with the Project.

The representations and warranties made in this Paragraph 7 shall survive termination of this Agreement.

**8.      Records, Access and Maintenance**.    Grantee shall establish and maintain during the Commitment Duration such records as are required by the Grantor in Paragraphs 3 and 4 hereof, and all relevant supporting documentation.    The Parties further agree that records required by the Grantor with respect to any questioned costs, audit disallowances, litigation or dispute between the Grantor and the Grantee shall be maintained for the time needed for the resolution of any such issue and that in the event of early termination of this Agreement, or if for any other reason the Grantor shall require a review of the records related to the Project, the Grantee shall, at its own cost and expense, segregate all such records related to the Project from its other records, if any.    The Grantee shall maintain and organize its records in such form so that, in case of a review of its records or audit, it is able to verify and document the information it provides in its Annual Progress Reports pursuant to Paragraph 3 hereof.    The provisions of this Paragraph shall survive termination of this Agreement.

**9.      Operation as an Authorized Project**.    Grantee agrees to operate the Project as set forth in its application for the Grant.

**10.    Maintenance of Project**.    Grantee shall maintain the Project for the entire Commitment Duration and shall not, during such period, either relocate the Project within the State from the site described in **Exhibit A**, without the express written approval of Grantor, or relocate the Project to another state or sell the Project to another company, other than those entities listed above as Grantee, without the express prior written consent of the Grantor.    Notwithstanding anything in this Agreement to the contrary, Grantee may transfer its employees to another location listed in Exhibit A; provided that there shall be no Grant Payments for any location that falls below the Minimum Eligibility Threshold requirement for that Project location.

**11.    Taxes and Other Charges**.    Grantee shall pay during the duration of this Agreement as the same become due, all taxes, assessments and governmental charges which may be required by law or contract to be paid by Grantee.    Grantee may in good faith contest such taxes and governmental charges and such taxes and charges may remain unpaid during the period of such contest provided that the facility housing the Project will not be subject to loss or forfeiture as a result.

**12.    Audits and Inspections**.    At any time during normal business hours upon reasonable written notice and as often as Grantor may reasonably deem necessary, the Grantee shall make available to the Grantor, for examination, and to appropriate State agencies or officials, all of its records with respect to matters covered by this Agreement including, but not limited to, records of personnel and conditions of employment and shall permit the Grantor to audit, examine and make excerpts or transcripts from such records.    The provisions of this Paragraph shall survive termination of this Agreement.    Grantee shall maintain records to adequately verify all information provided in any reports or schedules required under this Agreement.

**13.    Assignment**.    Grantee may not assign its interests in this Agreement to another company, other than those entities listed above as Grantee, without the prior written consent of Grantor.    Unless otherwise indicated by the Grantor in writing, any obligations hereunder shall become the obligations of any assignee or successor of the Grantee.

**14.**    **Default**.  Any one or more of the following shall constitute an event of default ("Event of Default") if the default is not cured within thirty (30) days after written notice of the default, provided, however, that said thirty (30) day period shall be extended an additional ninety (90) days if Grantee commences to cure the default within said thirty (30) day period and is diligently proceeding to cure the same.

A.    If the Minimum Eligibility Threshold is maintained at none of the Project locations listed on Exhibit A for the Commitment Duration; provided that no Grant Payments shall be due or paid for any location that falls below the Minimum Eligibility Threshold requirement for that Project location;

B.    If the number of employees employed in New Jersey by Grantee and its affiliates excluding New Employees under the Grant falls below 80% of the Base Employment Number; provided that the Grantor shall apply any job creation at the Project above the New Employment Commitment, or at the request of the Grantee, the Minimum Eligibility Threshold, against any losses in the Base Employment Number when determining whether employment has fallen below 80% of the Base Employment Number; and provided further that no New Employees included in determining 80% of the Base Employment Number shall be included for payment under the Grant.

C.    If Grantee has breached or failed to perform any other covenant or promise under this Agreement, except in the event the Grantee fails to maintain the New Employment Commitment which shall be subject to the provisions of Section 4B;

D.    If any representation or warranty made by Grantee herein, in the application for the Grant, or, in any report, certificate, financial statement or other instrument furnished in connection with the subject matter of this Agreement is false or misleading in any material respect;

E.    If any of the following has occurred:  1) Grantee has applied for, or consented to, the appointment of a receiver, trustee, or liquidator of all or a substantial portion of Grantee's assets;  2) Grantee has admitted in writing the inability to pay Grantee's debts as they mature;  3) Grantee has made a general assignment for the benefit of creditors;  4) Grantee has been adjudged a bankrupt, or filed a petition or an answer seeking an arrangement with creditors or taken advantage of any insolvency law, or an answer admitting the material allegations of a petition in bankruptcy or insolvency proceeding;  5) an order, judgment or decree has been entered, without the application, approval or consent of Grantee, by any court of competent jurisdiction approving a petition seeking reorganization of the Grantee, or appointing a receiver, trustee, or liquidator of Grantee or of a substantial part of its assets and such order shall continue unstayed and in effect for a period of forty-five (45) consecutive days;  6) Grantee has filed a voluntary petition in bankruptcy or has failed to remove an involuntary petition in bankruptcy within forty-five (45) days of the filing thereof.

F.    The failure of Grantee to timely submit the documents, materials, and information required to be submitted by this Agreement.

G.    Grantor has made a determination of debarment as to Grantee, pursuant to its debarment/disqualification regulations set forth in N.J.A.C. 19:30-2.1 et seq. as amended from time to time.

H.      If any Event of Default, as defined hereunder, has occurred and remains uncured under any other agreement entered into between Grantor and Grantee or under any PEO Agreement relating to the BEIP Grant.

I.      If the Grantee has moved the Project out of the State of New Jersey.

J.      If the Grantee has sold or assigned its operations at the Project to another company, including a related company, other than those entities listed above as Grantee, without the consent of the Grantor.

K.      If the Grantee is in default under any existing or future assistance provided by Grantor to Grantee and/or any of its subsidiaries, including but not limited to, entities that may not be related to Grantee and/or any of its subsidiaries, but contain common principals.

**15.**     **Remedies Upon Default**.   Upon the existence of any Event or Events of Default, the Grantor may, in its sole and absolute discretion, do any of the following, alone or in combination, after having first given Grantee notice and opportunity to cure the default in accordance with Paragraph 14 hereof:

A.      For Events of Default pursuant to Sections 14(A) through 14(H):

(1)     require the Grantee to repay a portion of the Grant previously paid to Grantee calculated by taking the percentage of the period of time the business did not comply with the Agreement for the entire Commitment Duration and multiplying said percentage by the total amount previously paid to Grantee under this Agreement.   As an example, a grantee with a 10 year grant has a 15 year Commitment Duration.   If the grantee is in compliance for 5 years and then an Event of Default occurs under this Agreement, it has satisfied the terms of the Agreement 33% of the Commitment Duration and has failed 67% of it.   Therefore, the grantee must repay 67% of the grant that it received;

(2)     reduce the duration of the Grant Term;

(3)     withhold payment of all Grant payments not yet paid at the time of the default during such time as an Event or Events of Default remain uncured;

(4)     terminate the agreement; and

(5)     take any other action legally available to it;

provided, however, that if the Event of Default is solely pursuant to Sections 14(A), prior to pursuing its remedies, the Grantor shall suspend the Grant Agreement up to a period of two years, provided the Grantee can demonstrate to Grantor's satisfaction, upon request, during that period a continued effort to cure the default and a commitment to growth in New Jersey.   An additional year of suspension may be granted upon application to the Grantor.   Any suspension shall not extend the term of the Grant.

B.      For Events of Default pursuant to Sections 14(I) through 14(K):

(1)     at the Grantor's discretion, any remedy listed above in subsection A(1) through (5); and

(2)     require the Grantee to repay the entire amount of the Grant previously paid to Grantee under this Agreement, plus interest and any cost of collection;

C.      Grantor shall not seek or maintain a legal action for an injunction against Grantee that seeks to prevent it from terminating the Project or relocating it within or out of the State of New Jersey prior to the end of the term of this Agreement, provided that the Grantee repays to Grantor, not later than ninety (90) days following delivery to Grantee of written notice from Grantor of its intention to seek such an injunction, all Grant Payments previously made hereunder, plus interest and cost of collection.

D.    The Grantor's rights under this Section 15 shall survive termination of the Agreement.

**16.    Set Off**. In the event Grantee has received financial assistance through any other State program administered by the Grantor, including but not limited to a grant pursuant to the Business Retention and Relocation Assistance Act, P.L. 2004, c. 65 as amended, defaulted under that program, and such default has been reduced to judgment, the Grantor may set off the benefit provided under the BEIP Program, on a dollar for dollar basis.

**17.    Forbearance Not a Waiver**.    No act of forbearance or failure to insist on the prompt performance by the Grantee of its obligations pursuant to this Agreement, either express or implied, shall be construed as a waiver by the Grantor of any of its rights hereunder.  In the event that any provision of this Agreement should be breached by Grantee and the breach may thereafter be waived by Grantor, such waiver shall be limited to the particular breach waived by Grantor and shall not be deemed to waive any other breach.

**18.    Indemnification**.  Grantee covenants and agrees to indemnify and hold harmless Grantor, the State of New Jersey and their respective members, agents, officers, employees and servants from all losses, claims, damages, liabilities, and costs whatsoever (including all costs, expenses and reasonable counsel fees incurred in investigating and defending such losses and claims, etc.), brought by any person or entity, and caused by, related to, arising or purportedly arising out of, or from: (i) the condition, use, possession, conduct, management, construction, and financing of the Project;(ii) the performance by Grantee or its PEO, if any, of its or the PEO's obligations under this Agreement; (iii) any loss, damage or injury to, or death of, any person occurring at or about or resulting from, the operations of the Project or any defect in the facility housing the Project; and,(iv) any damage or injury to property of Grantee or to the agents, servants, employees or co-employees of Grantee, caused by the negligence, gross negligence and willful misconduct of any person, except for: losses, claims, damages, liabilities and costs arising from the gross negligence or willful misconduct of Grantor, the State of New Jersey and their respective members, agents, officers, employees and servants.  The provisions of this Paragraph shall survive termination of this Agreement.

**19.    Adherence to State and Federal Laws and Regulations**.  Grantee agrees to comply with all applicable federal, state and local laws relevant to the Project and its operation.  Grantee accepts full responsibility for payments of all unemployment compensation, insurance premiums, worker's compensation premiums, income tax deductions, social security deductions, and any and all other taxes and or payroll deductions required for all employees engaged by Grantee in the performance of the Project.

**20.    Applicability of Disqualification Regulations to Entities**.  Grantor's disqualification/debarment regulations, which are set forth in N.J.A.C. 19:30-2.1 through 2.7, shall be applicable to any entities with which Grantee merges, consolidates or combines.  In the event that, in accordance with the procedures and provisions set forth in such regulations, Grantor makes a determination to deny BEIP assistance with respect to any entity, then, notwithstanding anything contained in the Agreement to the contrary, no grant will be made on the basis of the withholdings of the former employees of that entity who become employed on the Project.

**21.** **Confidentiality**. Any information or records provided by Grantee to Grantor shall be deemed confidential information if the information or records: (a) contain or pertain to financial records; to proprietary information; or to personnel matters; and (b) Grantee has notified Grantor of such classification at the time the information is provided to Grantor. Grantor agrees that from the date hereof it shall not disclose to any third party, without Grantee's prior written consent, the content of any confidential information, except as follows: (i) confidential information that is already part of the public knowledge, or that becomes part of the public knowledge by publication or otherwise, except, in the latter regard, for confidential information published by Grantor in contravention of this agreement; (ii) confidential information that Grantor can establish by competent proof was already in its possession and was not acquired directly or indirectly from Grantee; (iii) confidential information that Grantor may receive from a third party having a bona fide right to disclose such information; (iv) confidential information that is subject to any legal disclosure requirements applicable to the Grantor under the common law, or under any state or federal statutes, including the New Jersey Right to Know Law, subject to the protections afforded under such laws; (v) confidential information that is requested by any federal, or state, investigatory or regulatory agency, including the United States and New Jersey Departments of Labor ("Regulatory Agency or Agencies"); and (vi) confidential information that Grantor must provide to the Division in carrying out its responsibilities under the Act.

**22.** **Professional Employer Organizations**. Subject to the approval of Grantor, a PEO may become a co-employer of any of the employees subject to this Grant.

A.     Grantee's request to add a PEO as a co-employer shall be in writing and shall include an executed PEO Agreement with all applicable attachments and exhibits.

B.     Grantee acknowledges and agrees that Grantor shall enforce the default and remedy provisions of this Agreement and the PEO Agreement against Grantee for any failure on the part of PEO to perform the obligations assumed by PEO in connection with this Agreement or the PEO Agreement or if any statement, representation or warranty of PEO to Grantor in any agreement, report, certificate, financial statement or other document furnished in connection with the subject of this Agreement or the PEO Agreement is false or misleading in any material respect. Grantee understands that all such statements, representations and warranties have been relied upon by Grantor as an inducement to accept PEO as a co-employer under the Grant and shall continue to be relied upon by Grantor in administering the Grant. Grantee further understands and agrees that, if, during the term of this Agreement, any such statements, representations and warranties become false or misleading it shall have a duty to immediately notify Grantor in writing of such fact.

**23.** **Miscellaneous**.

A.     Governing Law. This Agreement shall be governed by the laws of the State of New Jersey.

B.     Forum and Venue. All actions related to the matters which are the subject of this Agreement shall be forumed and venued in a court of competent jurisdiction in the County of Mercer and State of New Jersey.

C.     Entire Agreement. This Agreement and its exhibits and any documents referred to herein constitute the complete understanding of the Parties and merge and supersede any and all other discussions, agreements and understandings, either oral or written, between the Parties with respect to the subject matter of this Agreement.

D.    Severability.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid pursuant to applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provisions of this Agreement, unless Grantor shall in its sole and absolute discretion deem the invalidated provision essential to the accomplishment of the public purposes served by this Agreement, in which case Grantor has the right to terminate this Agreement and all benefits provided to Grantee hereunder upon the giving of sixty (60) days prior notice as set forth in Paragraph 23E hereof.

E.    Notices.  All notices, consents, demands, requests and other communications which may be or are required to be given pursuant to any term of this Agreement shall be in writing and shall be deemed duly given when personally delivered or sent by United States mail, registered or certified, return receipt requested, postage prepaid, to the addresses set forth hereunder or to such other address as each party to this Agreement may hereafter designate in a written notice to the other party transmitted in accordance with this provision.

Grantor:

      Incentives Portfolio Management
      Attn: Director
      New Jersey Economic Development Authority
      PO Box 990
      Trenton, New Jersey 08625-0990

Grantee: (Please fill in appropriate address below)

      650 Liberty Avenue
      Union NJ 07083

F.    Amendments or Modifications.  This Agreement may only be amended in writing executed by both Parties.  Such Amendments or Modifications shall become effective only upon execution of same by both Parties.

G.    Headings.  Section headings contained in this Agreement are inserted for convenience only and shall not be deemed to be a part of this Agreement.

H.    Contractual Liability Act.  The rights and remedies of the Grantee under this Agreement shall be subject to the New Jersey Contractual Liability Act, N.J.S.A. 59:13-1 et seq., the provisions of which are hereby incorporated herein by reference.

I.    Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

J.    Successors and Assigns.  This Agreement shall be binding upon the successors and assigns of the parties hereto.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their respective officers duly authorized as of the date and year first set forth above.

WITNESS:

GRANTOR:
**NEW JERSEY ECONOMIC DEVELOPMENT AUTHORITY**

By: _____
Teri Dunlop
Director-Closing Services

WITNESS:

GRANTEE:
**BED BATH & BEYOND INC.**

By: _____
Name: Eugene A. Castagna
Title: Chief Financial Officer and Treasurer

WITNESS:

GRANTEE:
**BED BATH & BEYOND OF CALIFORNIA LIMITED LIABILITY COMPANY**

By: _____
Name: Leonard Feinstein
Title: President- Bed Bath & Beyond
Procurement Co. Inc., its Sole Member

WITNESS:

GRANTEE:
**BED BATH & BEYOND PROCUREMENT CO.**

By: _____
Name: Leonard Feinstein
Title: President

WITNESS:

GRANTEE:
**BBB VALUE SERVICES INC.**

By: _____
Name: Eugene A. Castagna
Title: Treasurer and Assistant Secretary

WITNESS:

_____

GRANTEE:
**BUY BUY BABY STORES INC.**

By: _____
Name: Eugene A. Castagna
Title: President and Secretary

WITNESS:

_____

GRANTEE:
**HARMON STORES INC.**

By: _____
Name: G. William Waltzinger, Jr.
Title: President and Secretary

WITNESS:

_____

GRANTEE:
**CHRISTMAS TREE SHOPS INC.**

By: _____
Name: Eugene A. Castagna
Title: Treasurer

## EXHIBIT A

### NEW JERSEY ECONOMIC DEVELOPMENT AUTHORITY
### PROJECT SUMMARY - BUSINESS EMPLOYMENT INCENTIVE PROGRAM

**GRANTEE:** **BED BATH AND BEYOND, INC./BED BATH & BEYOND OF CALIFORNIA LIMITED LIABILITY COMPANY/BED BATH & BEYOND PROCUREMENT CO./BBB VALUE SERVICES INC./BUY BUY BABY STORES INC./HARMON STORES INC./CHRISTMAS TREE SHOPS INC.**

**Application P#36408**

**PROJECT:** **Redistribution of operations resulting in relocation of and creation of an additional 340 jobs**

**PROJECT LOCATION:** **650 Liberty Ave.**
**Union Township**
**Union County**

**GRANT:** **Percentage:  65%**
**Term:        10 Years**

**BASE EMPLOYMENT NUMBER:**     **2440   (New Jersey Employment at Application)**

**PROJECTED NEW EMPLOYMENT COMMITMENT**
**BEIP JOBS:**          **Year 1: 135    Year 2: 205    Base Years Total = 340**

**PROJECT IS: ( X ) Expansion       ( X ) Relocation from:  New York**

**CONSTRUCTION:    ( X ) Yes          (  ) No**

**PROJECT OWNERSHIP HEADQUARTERED IN:  Union Township, Union County, New Jersey**

**APPLICANT OWNERSHIP: ( X ) Domestic ( ) Foreign:    N/A**

**MINIMUM ELIGIBILITY THRESHOLD (MET):        25**

**EXHIBIT B**

CERTIFICATE OF **BED BATH AND BEYOND, INC./BED BATH & BEYOND OF CALIFORNIA LIMITED LIABILITY COMPANY/BED BATH & BEYOND PROCUREMENT CO./BBB VALUE SERVICES INC./BUY BUY BABY STORES INC./HARMON STORES INC./CHRISTMAS TREE SHOPS INC.**

Re:   Business Employment Incentive Grant Agreement between New Jersey Economic Development Authority ("Grantor") and **BED BATH AND BEYOND, INC./BED BATH & BEYOND OF CALIFORNIA LIMITED LIABILITY COMPANY/BED BATH & BEYOND PROCUREMENT CO./BBB VALUE SERVICES INC./BUY BUY BABY STORES INC./HARMON STORES INC./CHRISTMAS TREE SHOPS INC.** ("Grantee") dated July 25, 2011 ("Agreement")

Project Location(s): _____

_____

In accordance with the requirements of Paragraph 3C2 of the Agreement, the undersigned authorized officers or signatories with binding authority of Grantee HEREBY CERTIFY on behalf of the Grantee as follows (all capitalized terms used herein and not defined herein shall have the meanings set forth in the Agreement, as same may from time to time be amended or modified):

1. No New Employee hired during the Initial Reporting Period(s) is a child, grandchild, parent or spouse of any individual who has a direct or indirect ownership of at least 15% of the profits, capital or value of Grantee;

2. The total number of New Employees at the Project as of December 31st of the preceding calendar year are: _____.

3. Below is a list of all grants received by Grantee under State law during the Initial Reporting Period(s), indicating the amounts, grantors and dates received of such grants:

_____

_____

_____

_____

4.  Below is a list of all grants offered under State law that have been applied for by Grantee during the Initial Reporting Period(s) and that are still pending notification of award as of the date hereof, indicating the provider of the grants and the amounts and anticipated dates of the award:

_____

_____

_____

_____

5.  The information contained in each and every statement, report, or other document submitted to Grantor by Grantee during the Initial Reporting Period(s) in accordance with the requirements of the Agreement, Act or Regulations is true, complete and correct in all material respects as of the date hereof.

IN WITNESS WHEREOF, the undersigned have executed this Certificate as authorized officers or signatories of Grantee and on behalf of Grantee this _____ day of _____, 20___.

WITNESS:                                         GRANTEE:
                                                 **BED BATH & BEYOND INC.**

_____           By:_____
                                                 Name:
                                                 Title:

WITNESS:                                         GRANTEE:
                                                 **BED BATH & BEYOND OF CALIFORNIA
                                                 LIMITED LIABILITY COMPANY**

_____           By:_____
                                                 Name:
                                                 Title:

WITNESS:                                         GRANTEE:
                                                 **BED BATH & BEYOND PROCUREMENT CO.**

_____           By:_____
                                                 Name:
                                                 Title:

WITNESS:                                    GRANTEE:
                                            **BBB VALUE SERVICES INC.**

_____                 By:_____
                                            Name:
                                            Title:


WITNESS:                                    GRANTEE:
                                            **BUY BUY BABY STORES INC.**

_____                 By:_____
                                            Name:
                                            Title:


WITNESS:                                    GRANTEE:
                                            **HARMON STORES INC.**

_____                 By:_____
                                            Name:
                                            Title:


WITNESS:                                    GRANTEE:
                                            **CHRISTMAS TREE SHOPS INC.**

_____                 By:_____
                                            Name:
                                            Title:

**EXHIBIT C**

CERTIFICATE OF **BED BATH AND BEYOND, INC./BED BATH & BEYOND OF CALIFORNIA LIMITED LIABILITY COMPANY/BED BATH & BEYOND PROCUREMENT CO./BBB VALUE SERVICES INC./BUY BUY BABY STORES INC./HARMON STORES INC./CHRISTMAS TREE SHOPS INC.**

ANNUAL PROGRESS REPORT

**(TO BE USED FOR THE FIRST YEAR OF THE GRANT TERM AND ANY GRANT YEAR THAT THE GRANTOR REQUIRES A FULL PAYROLL REPORT)**

Re:     Business Employment Incentive Grant Agreement between New Jersey Economic Development Authority ("Grantor") and **BED BATH AND BEYOND, INC./BED BATH & BEYOND OF CALIFORNIA LIMITED LIABILITY COMPANY/BED BATH & BEYOND PROCUREMENT CO./BBB VALUE SERVICES INC./BUY BUY BABY STORES INC./HARMON STORES INC./CHRISTMAS TREE SHOPS INC.** ("Grantee") dated July 25, 2011 ("Agreement")

Project Location: _____
*(list one location only - if there are multiple project locations, a separate report (Exhibit C) is required for each location)*

In accordance with the requirements of Paragraph 3D1 of the Agreement, the undersigned authorized officers or signatories with binding authority of Grantee HEREBY CERTIFY on behalf of the Grantee as follows (all capitalized terms used herein and not defined herein shall have the meanings set forth in the Agreement, as same may from time to time be amended or modified):

1. No New Employee hired during the calendar year immediately preceding the year in which this Progress Report is due, or, if the Final Grant Period occurred in such preceding year, then that portion of such year commencing on January 1, and ending on the date that the Final Grant Period expired ("the Prior Year"), is a child, grandchild, parent or spouse of any individual who has a direct or indirect ownership of at least 15% of the profits, capital or value of Grantee;

2. All Eligible Employees are covered under a group health plan provided by the Grantee under Section 14 of P.L. 1997, c.146 (C.17B27-54), Section 1 of P.L. 1992, c.162 (C.17B:27A-17) or Article 2 of Title 17B of the New Jersey Statutes;

3. Attached hereto is a list of all grants received by Grantee under State law during the Prior Year, indicating the amounts, grantors and dates received of such grants;

4. Attached hereto is a list of all grants offered under State law that have been applied for by Grantee during the Prior Year and that are still pending notification of award as of the date hereof, indicating the provider of the grants and the amounts and anticipated dates of the award;

5. Attached hereto is the Annual Progress Report providing the following information with respect to the Project as of the end of the Prior Year:

i)      the number of New Employees;

ii)     the amount of Withholdings in connection with each New Employee for the preceding year;

iii)    the aggregate annual payroll of the New Employees;

iv)     the names of New Employees;

v)      residence of New Employees, by city and state;

vi)     the date each New Employee was hired by the Grantee and/or the date each New Employee began employment with respect to the Project;

vii)    the annual salaries of each New Employee, including any overtime paid, bonuses, and stock options;

viii)   the average wage of the New Employees;

ix)     a listing indicating the termination dates, if any, of any New Employees;

x)      the social security numbers for each New Employee; and

xi)     any other information the Grantor deems appropriate and necessary for verification purposes.

xii)    number of employees the Grantee is currently employing in New Jersey.

6. The information contained in each and every statement, report, or other document submitted to Grantor by Grantee during the Prior Year in accordance with the requirements of the Agreement, Act or Regulations is true, complete and correct in all material respects as of the date hereof.

IN WITNESS WHEREOF, the undersigned have executed this Certificate as authorized officers or signatories of Grantee and on behalf of Grantee this _____ day of _____, 20_____.

WITNESS:                                    GRANTEE:
                                            **BED BATH & BEYOND INC.**


_____            By:_____
                                            Name:
                                            Title:

WITNESS:                                    GRANTEE:
                                            **BED BATH & BEYOND OF CALIFORNIA
                                            LIMITED LIABILITY COMPANY**


_____            By:_____
                                            Name:
                                            Title:

WITNESS:

GRANTEE:
**BED BATH & BEYOND PROCUREMENT CO.**

_____

By:_____
Name:
Title:

WITNESS:

GRANTEE:
**BBB VALUE SERVICES INC.**

_____

By:_____
Name:
Title:

WITNESS:

GRANTEE:
**BUY BUY BABY STORES INC.**

_____

By:_____
Name:
Title:

WITNESS:

GRANTEE:
**HARMON STORES INC.**

_____

By:_____
Name:
Title:

WITNESS:

GRANTEE:
**CHRISTMAS TREE SHOPS INC.**

_____

By:_____
Name:
Title:

## EXHIBIT C1

### ANNUAL PROGRESS REPORT

**(TO BE USED ANY GRANT YEAR THAT THE GRANTOR REQUIRES AN AGGREGATE REPORT)**

Re:    Business Employment Incentive Grant Agreement between New Jersey Economic Development Authority ("Grantor") and **BED BATH AND BEYOND, INC./BED BATH & BEYOND OF CALIFORNIA LIMITED LIABILITY COMPANY/BED BATH & BEYOND PROCUREMENT CO./BBB VALUE SERVICES INC./BUY BUY BABY STORES INC./HARMON STORES INC./CHRISTMAS TREE SHOPS INC.** ("Grantee") dated July 25, 2011 ("Agreement")

Project Location: _____
*(list one location only - if there are multiple project locations, a separate report (Exhibit C1) is required for each location)*

      In accordance with the requirements of Paragraph 3 (D) (2) of the Agreement, the undersigned authorized officers or signatories with binding authority of Grantee HEREBY CERTIFY on behalf of the Grantee as follows (all capitalized terms used herein and not defined herein shall have the meanings set forth in the Agreement, as same may from time to time be amended or modified):

      1. No New Employee hired during the calendar year immediately preceding the year in which this Progress Report is due, or, if the Final Grant Period occurred in such preceding year, then that portion of such year commencing on January 1, and ending on the date that the Final Grant Period expired ("the Prior Year"), is a child, grandchild, parent or spouse of any individual who has a direct or indirect ownership of at least 15% of the profits, capital or value of Grantee;

      2. All Eligible Employees are covered under a group health plan provided by the Grantee under Section 14 of P.L. 1997, c.146 (C.17B27-54), Section 1 of P.L. 1992, c.162 (C.17B:27A-17) or Article 2 of Title 17B of the New Jersey Statutes (This only applies to Grants approved after July 1, 2003.);

      3. a.    The number of employees carried over from the prior reporting calendar year _____;

          b.    The number of eligible positions created in the reporting calendar year _____;

          c.    The number of employees included on the grant that were terminated in the reporting calendar year _____;

          d.    The net amount of employees included on the grant as of 12/31 of the reporting calendar year _____.

      4. The total aggregate amount of salaries paid to the employees included on the grant for the reporting calendar year is: $_____.

      5. The total aggregate amount of withholdings paid on behalf of the employees included on the grant for the reporting calendar year is: $_____.

      6. The total NJ wages for all NJ employees for the reporting calendar year: $_____.

7. The total NJ withholdings for all NJ employees for the reporting calendar year: $_____.

8.  The Average Annual Salary of employees included on the grant is: $_____.

9. Total number of all NJ employees for the reporting calendar year is: _____.

10.  The total amount of the grant to be awarded for the reporting calendar year is:
    _____% (grant award) x $_____(amount of withholdings)
= $_____ (total amount of grant award).

    11.    The information contained in each and every statement, report, or other document submitted to Grantor by Grantee during the Prior Year in accordance with the requirements of the Agreement, Act or Regulations is true, complete and correct in all material respects as of the date hereof.

    IN WITNESS WHEREOF, the undersigned have executed this Certificate as authorized officers or signatories of Grantee and on behalf of Grantee this ___ day of _____, 20___.

WITNESS:                                    GRANTEE:
                                            **BED BATH & BEYOND INC.**


_____            By:_____
                                            Name:
                                            Title:


WITNESS:                                    GRANTEE:
                                            **BED BATH & BEYOND OF CALIFORNIA
                                            LIMITED LIABILITY COMPANY**


_____            By:_____
                                            Name:
                                            Title:


WITNESS:                                    GRANTEE:
                                            **BED BATH & BEYOND PROCUREMENT CO.**


_____            By:_____
                                            Name:
                                            Title:

WITNESS:

GRANTEE:
**BBB VALUE SERVICES INC.**


By:_____
Name:
Title:

WITNESS:

GRANTEE:
**BUY BUY BABY STORES INC.**


By:_____
Name:
Title:

WITNESS:

GRANTEE:
**HARMON STORES INC.**


By:_____
Name:
Title:

WITNESS:

GRANTEE:
**CHRISTMAS TREE SHOPS INC.**


By:_____
Name:
Title:

## EXHIBIT D

### CERTIFICATE OF COMPLIANCE

Re:    Business Employment Incentive Grant Agreement between New Jersey Economic Development Authority ("Grantor") and **BED BATH AND BEYOND, INC./BED BATH & BEYOND OF CALIFORNIA LIMITED LIABILITY COMPANY/BED BATH & BEYOND PROCUREMENT CO./BBB VALUE SERVICES INC./BUY BUY BABY STORES INC./HARMON STORES INC./CHRISTMAS TREE SHOPS INC.** ("Grantee") dated July 25, 2011 ("Agreement")

Project Location(s): _____

_____

In accordance with the requirements of Paragraph 4D of the Agreement, the undersigned authorized officers or signatories with binding authority of Grantee HEREBY CERTIFIES on behalf of the Grantee as follows (all capitalized terms used herein and not defined herein shall have the meanings set forth in the Agreement):

1.    The undersigned is an authorized officer of Grantee and has been duly authorized by Grantee to execute and deliver this certificate.

2.    As of the date hereof, Grantee is in full compliance with all of the terms and conditions of the Agreement; and,

3.    Upon due investigation and diligence, the undersigned is not aware of the occurrence of any Event of Default that has not been cured.

IN WITNESS WHEREOF, the undersigned has executed this Certificate as an authorized officer or signatory with binding authority of Grantee and on behalf of Grantee this _____ day of _____, 20___.

WITNESS:                                        GRANTEE:
                                                **BED BATH & BEYOND INC.**

_____                By:_____
                                                Name:
                                                Title:

WITNESS:                                        GRANTEE:
                                                **BED BATH & BEYOND OF CALIFORNIA
                                                LIMITED LIABILITY COMPANY**

_____                By:_____
                                                Name:
                                                Title:

WITNESS:

GRANTEE:
**BED BATH & BEYOND PROCUREMENT CO.**

_____

By:_____
Name:
Title:

WITNESS:

GRANTEE:
**BBB VALUE SERVICES INC.**

_____

By:_____
Name:
Title:

WITNESS:

GRANTEE:
**BUY BUY BABY STORES INC.**

_____

By:_____
Name:
Title:

WITNESS:

GRANTEE:
**HARMON STORES INC.**

_____

By:_____
Name:
Title:

WITNESS:

GRANTEE:
**CHRISTMAS TREE SHOPS INC.**

_____

By:_____
Name:
Title:

## EXHIBIT E

Re:    Business Employment Incentive Grant Agreement between New Jersey Economic Development Authority ("Grantor") and **BED BATH AND BEYOND, INC./BED BATH & BEYOND OF CALIFORNIA LIMITED LIABILITY COMPANY/BED BATH & BEYOND PROCUREMENT CO./BBB VALUE SERVICES INC./BUY BUY BABY STORES INC./HARMON STORES INC./CHRISTMAS TREE SHOPS INC.** ("Grantee") dated July 25, 2011 ("Agreement")

Attached hereto is a payroll listing of all existing employees in New Jersey prior to the Effective Date. The listing should provide the following information:

<u>Full Name</u>                    <u>Job Title</u>                            <u>Job Location</u>

## EXHIBIT  F

### Formula Evaluation
(scoring used to determine percentage of BEIP grant)

**Creation of Eligible New Jobs**

Non-Targeted Industry Clusters
5 = 500+
4 = 201-499
3 = 131-200
2 = 76-130
1 = 25-75

Targeted Industry Clusters (high-tech/bio-tech)
5 = 500+
4 = 201-499
3 = 126-200
2 = 51-125
1 = 10-50

**Jobs at Risk**

Non-Targeted Industry Clusters
3 = 500+
2 = 201 to 499
1 = 25 to 200
0 = 1 to 24

Targeted Industry Clusters (high-tech/bio-tech)
3 = 301+
2 = 151-300
1 = 10-150
0 = 1-9

**Designated Industry Type**
2 = targeted
0 = non-targeted

**Innovation Zones**
2 = yes
0 = no

**Leverage of Private Investment to State Investment/Exposure**
2 = 3 to 1 and up
1 = 2 to 1
0 = 1 to 1

**Capital Investment (Private Debt and Equity) by the Applicant in Project**
5 = $125,000,000+
4 = $75,000-$124,999,999
3 = $20,000,000-$74,999,999
2 = $3,500,000–19,999,999
1 = $500,000–3,499,999

**Average Wage of Eligible New Employees**
4 = $75,001+
3 = $50,001 to $75,000
2 = $30,001 to $50,000
1 = $18,001 to $30,000
0 = $0 to $18,000

## NOTES TO ORGANIZATIONAL CHART
### As of July 1, 2011

1.  **Bed Bath & Beyond Inc., a New York corporation**

> Directors:
>
> Warren Eisenberg
> Leonard Feinstein
> Klaus Eppler
> Steven H. Temares
> Victoria A. Morrison
> Dean S. Adler
> Stanley F. Barshay
> Jordan Heller
> Patrick R. Gaston

| Name: | Officers: | Announcement Date: (most recent promotion) |
|---|---|---|
| Warren Eisenberg | Co-Chairman and Secretary | |
| Leonard Feinstein | Co-Chairman | |
| Steven H. Temares | Chief Executive Officer | 4/2/03 |
| Eugene A. Castagna | Chief Financial Officer and Treasurer | 1/03/06 |
| Arthur Stark | President and Chief Merchandising Officer | 1/03/06 |
| Matthew Fiorilli | Senior Vice President - Stores | 1/25/99 |
| Ronald Curwin | Senior Vice President - Investor Relations | 1/03/06 |
| William Onksen | Vice President - Stores MidAtlantic and Midwest Regions | 1/25/99 |
| Martin Eisenberg | Vice President – Stores - Northeast Region | 1/25/99 |
| P. Timothy Brewster | Vice President - Stores NYC Region | 1/25/99 |
| G. William Waltzinger, Jr. | Vice President – Corporate Development | 1/25/99 |
| Allan N. Rauch | Vice President - Legal and General Counsel Assistant Secretary | 1/25/99 |
| Richard C. McMahon | Chief Strategy Officer and Vice President – Corporate Operations | 1/03/06 |
| Christine R. Pirog | Vice President - Store Operations | 2/14/00 |
| Jim Brendle | Vice President - Construction & Store Dev. | 7/11/00 |
| Michael J. Callahan | Vice President - Corporate Counsel | 7/11/00 |
| Connie Van Dyke | Vice President - Human Resources | 7/11/00 |
| Rita Little | Vice President - Marketing | 7/11/00 |
| Joseph P. Rowland | Vice President – eService Operations | 6/28/01 |
| Susan E. Lattmann | Vice President – Finance | 5/19/06 |
| Jeffrey W. Macak | Vice President – Supply Chain Logistics | 10/2/01 |
| Seth D. Geldzahler | Vice President – Real Estate | 3/19/02 |

| Alan M. Freeman | Vice President – Real Estate Counsel and Assistant Secretary | 7/9/02 |
| Teresa A. Miller | Vice President – Purchasing | 7/9/02 |
| Hal R. Shapiro | Vice President – Tax Planning | 10/4/10 |
| William T. Plate | Vice President – Asset Management, Safety and Loss Prevention | 7/9/02 |
| Kevin M. Wanner | Vice President – Technology and Operations | 7/9/02 |
| Patrick M. Kelley | Vice President – Stores - Western Region | 7/12/05 |
| Robert Claybrook | Vice President - Chief Information Officer | 5/13/10 |
| Charles E. Arnold | Vice President – Stores – Southwest Region | 1/19/06 |
| Robyn M. D'Elia | Vice President – Controller | 5/19/10 |
| David S. Denenberg | Vice President – Merchandise Control | 1/19/06 |
| Salvatore J. Dimino | Vice President – Stores – Southeast Region | 1/19/06 |
| Francis Garrity | Vice President – Stores – Midwest Region (Detroit) | 1/19/06 |
| Jim O'Connor | Vice President – Safety and Loss Prevention | 1/19/06 |
| Dana Pelan | Vice President – Stores – Midwest Region (Chicago) | 1/19/06 |
| Ross Richman | Vice President – Financial Operations Analysis | 1/19/06 |
| Hank Reinhart | Vice President – Customer Service and Bridal | 4/26/06 |
| Louis M. Sepe | Vice President – Customer & Business Analytics | 10/4/10 |
| Robert A. Roe | Vice President – Store and Financial Systems | 7/16/07 |
| Kenneth Bradley | Vice President – Litigation Counsel | 5/13/10 |
| Scott Hames | Vice President – Marketing & Analytics | 10/4/10 |
| Steven Taplits | Vice President – Tax | 10/4/10 |
| Kathryn Bernstein | Vice President – Food Development | 2/8/11 |
| Tim Kirchner | Vice President – IT Finance | 2/8/11 |

## 2.    *BBBY Management Corporation, a New Jersey corporation*

Directors:
Warren Eisenberg
Leonard Feinstein

Officers:

| Warren Eisenberg | President and Secretary |
| Leonard Feinstein | Vice President |
| Eugene A. Castagna | Treasurer |
| Susan E. Lattmann | Assistant Treasurer |
| Steven Taplits | Assistant Secretary |

3.    *Bed 'N Bath Stores Inc., a New Jersey corporation*

Directors:
Warren Eisenberg
Leonard Feinstein

Officers:

| | |
|---|---|
| Leonard Feinstein | President |
| Warren Eisenberg | Vice President/Secretary |
| Eugene A. Castagna | Treasurer |
| Susan E. Lattmann | Assistant Treasurer |
| Steven Taplits | Assistant Secretary |

4.    *Bed Bath & Beyond of California Limited Liability Company,*
      *a Delaware limited liability company*

Sole Member:
Bed Bath & Beyond Procurement Co. Inc.

5.    *Real Estate Subsidiaries (Bed Bath & Beyond and Harmon)*

Directors:
Warren Eisenberg
Leonard Feinstein

Officers:

| | |
|---|---|
| Warren Eisenberg | President |
| Leonard Feinstein | Vice President and Secretary |
| Eugene A. Castagna | Treasurer |
| Steven H. Temares | Vice President and Assistant Secretary |
| Allan N. Rauch | Assistant Secretary |
| Alan M. Freeman | Assistant Secretary |
| Seth Geldzahler | Assistant Secretary |
| Steven Taplits | Assistant Secretary |
| Susan E. Lattmann | Assistant Treasurer |

J:\GENERAL\Lantzman\CORPORATE\ORGCHART\DIR July 1, 2011.doc

6.    ***Bed Bath & Beyond Procurement Co. Inc., a New York corporation***

> Directors
> Leonard Feinstein
> Steven H. Temares
> Arthur Stark
> Peter Samuels
> Bruce Sales
>
> Officers
> Leonard Feinstein       President, Secretary & Treasurer
> Lydia DeSilva           Assistant Secretary
> Nancy J. Katz           Vice President, General Merchandise Manager – Hardlines
> Farley S. Nachemin      Vice President, General Merchandise Manager - Bath and Seasonal
> Alan J. Natowitz        Vice President, General Merchandise Manager - Bedding and
>                         Window
> Nika Markus             Vice President – Merchandise Planning and Allocation

7.    ***BBB Ft. Lauderdale LLC, a Florida limited liability company***

> Sole Member
> Bed Bath & Beyond Inc.

8.    ***BBB Bakersfield LLC, a California limited liability company***

> Sole Member
> Bed Bath & Beyond Inc.

9.    ***BBB of Forest Park LLC, an Illinois limited liability company***

> Sole Member
> Bed Bath & Beyond Inc.

J:\GENERAL\Lantzman\CORPORATE\ORGCHART\DIR July 1, 2011.doc

**10.**    ***Harmon Stores, Inc., a Delaware corporation***

<u>Directors</u>
Leonard Feinstein
Warren Eisenberg
Steven H. Temares

<u>Officers</u>

| | |
|---|---|
| G. William Waltzinger, Jr. | President and Secretary |
| Michael J. Callahan | Vice President |
| Alan Jacobson | Vice President – Stores and Assistant Secretary |
| Richard S. Acciarito | Vice President – Corporate Operations |
| Dave Eckert | Vice President and General Merchandise Manager |
| Allan N. Rauch | Assistant Secretary |
| Alan M. Freeman | Assistant Secretary |
| Seth Geldzahler | Assistant Secretary |
| Steven Taplits | Assistant Secretary |
| Susan E. Lattmann | Treasurer |

**11.**    ***Christmas Tree Shops, Inc., a Massachusetts corporation***

<u>Directors:</u>
Warren Eisenberg (Director and Authorized Signatory)
Leonard Feinstein
Steven H. Temares (Director and Authorized Signatory)

<u>Officers:</u>

| | |
|---|---|
| Todd Johnson | President |
| Ed Kopil | Vice President – Stores |
| Eric Van Der Valk | Vice President – Planning, Distribution and Sourcing |
| Loretta Groller | Vice President – Merchandise Manager |
| Manny Francione | Vice President – Merchandise Manager |
| Dave Stahley | Vice President – Merchandise Manager |
| Bill Gilooly | Vice President – Human Resources |
| Laura Crossen | Vice President – Financial Management |
| Eugene A. Castagna | Treasurer |
| Susan E. Lattmann | Assistant Treasurer and Secretary |
| Allan N. Rauch | Assistant Secretary |
| Alan M. Freeman | Assistant Secretary |
| Seth Geldzahler | Assistant Secretary |
| Steven Taplits | Assistant Secretary |

12.  **Nantucket Distributing (HK) Limited, a Hong Kong corporation**

Directors:
Hung Wai Ying (Candy)
Warren Eisenberg
Leonard Feinstein
Michael J. Callahan
Steven H. Temares
Todd Johnson

Officers:
None

13.  **Nantucket Distributing Co., Inc., a Massachusetts corporation**

Directors:
Warren Eisenberg
Leonard Feinstein
Steven H. Temares

Officers:
Todd Johnson                        President
Susan E. Lattmann                  Treasurer and Secretary
Laura Crossen                       Assistant Secretary

14.  **Bed Bath & Beyond of Gallery Place L.L.C., a Delaware limited liability company**

Sole Member
Bed Bath & Beyond Inc.

16.  **BBB of West L.A. LLC, a California limited liability company**

Sole Member:
Bed Bath & Beyond of California Limited Liability Company

**17.**   ***Buy Buy Baby, Inc., a Delaware corporation***

    <u>Directors:</u>
Warren Eisenberg
Leonard Feinstein
Steven Temares (Director and Authorized Signatory)
Arthur Stark
Matthew Fiorilli

    <u>Officers:</u>

| | |
|---|---|
| Eugene A. Castagna | President and Secretary |
| Michael J. Callahan | Vice President |
| Meka Millstone-Shroff | Vice President - Corporate Operations |
| Glen Cary | Vice President – Stores |
| Ken Brous | Vice President and General Merchandise Manager |
| Susan E. Lattmann | Treasurer and Assistant Secretary |
| Allan N. Rauch | Assistant Secretary (and Authorized Signatory) |
| Alan M. Freeman | Assistant Secretary |
| Seth Geldzahler | Assistant Secretary |
| Steven Taplits | Assistant Secretary |

**18.**   ***Real Estate Subsidiaries (Buy Buy Baby)***

    <u>Directors:</u>
Warren Eisenberg
Leonard Feinstein
Eugene A. Castagna
Michael J. Callahan
Allan N. Rauch

    <u>Officers:</u>

| | |
|---|---|
| Eugene A. Castagna | President and Secretary |
| Michael J. Callahan | Vice President |
| Susan E. Lattmann | Treasurer and Assistant Secretary |
| Allan N. Rauch | Assistant Secretary |
| Alan M. Freeman | Assistant Secretary |
| Seth Geldzahler | Assistant Secretary |
| Steven Taplits | Assistant Secretary |

19.    *Canada Operating Company*

*Bed Bath & Beyond Canada L.P., an Ontario limited partnership
(doing business as Bed Bath & Beyond)*

General Partner                     Limited Partner

BBB Canada Ltd.                     BBB Canada LP Inc.

a.   *General Partner of the Operating Company - BBB Canada Ltd., a Canadian federal
     corporation*

Shareholder:
Bed Bath & Beyond Inc.

Directors:
Warren Eisenberg
Leonard Feinstein
Steven H. Temares
Greg Dyer

Officers:
| | |
|---|---|
| Richard McMahon | President |
| Steven Temares | Vice President |
| Greg Dyer | Vice President – Stores - Canada |
| Eugene A. Castagna | Treasurer |
| Allan N. Rauch | Vice President and Secretary |
| Alan M. Freeman | Assistant Secretary |
| Seth Geldzahler | Assistant Secretary |

b.   *Limited Partner of the Operating Company- BBB Canada LP Inc., a Delaware
     corporation*

Shareholder:
Bed Bath & Beyond Inc.

Director:
Matthew Fiorilli

Officers:
| | |
|---|---|
| Arthur Stark | President |
| G. William Waltzinger, Jr. | Vice President |
| Sarah W. Gregory | Secretary |
| Susan E. Lattmann | Treasurer |

20. ***BBB Mexico LLC, a Delaware limited liability company***

   <u>Sole Member</u>
   Bed Bath & Beyond Inc.

   \* See Organizational Chart for more information on related Mexico entities.

21. ***BBB Braintree LLC, a Delaware limited liability company***

   <u>Sole Member</u>
   Bed Bath & Beyond Inc.

22. ***BBB Value Services Inc., a Florida corporation***

   <u>Directors</u>
   Arthur Stark
   Matthew Fiorilli
   Allan N. Rauch

   <u>Officers</u>

   | | |
   |---|---|
   | Matt Fiorilli | President |
   | Eugene Castagna | Treasurer and Assistant Secretary |
   | Allan N. Rauch | Vice President and Secretary |
   | Susan E. Lattmann | Assistant Secretary and Assistant Treasurer |

23. ***BBB Marketplace LLC, a Delaware limited liability company***

   <u>Sole Member</u>
   Bed Bath & Beyond Inc.

J:\GENERAL\Lantzman\CORPORATE\ORGCHART\DIR July 1, 2011.doc