**THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>20230930-DK-BUTTERFLY-1, INC., f/k/a<br>BED BATH & BEYOND INC., *et al.*,<br><br>        Debtors. | Chapter 11<br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |
| MICHAEL GOLDBERG, as Plan<br>Administrator for 20230930-DK-<br>BUTTERFLY-1, INC., f/k/a Bed Bath &<br>Beyond Inc.,<br>        Plaintiff,<br>  v.<br><br>NEW JERSEY ECONOMIC<br>DEVELOPMENT AUTHORITY,<br><br>        Defendant. | Adv. No. 24-01443-VFP |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

---

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
Jeffrey Bernstein, Esq.
Eliott Berman, Esq. (admitted *pro hac vice*)
570 Broad Street, Suite 1401
Newark, NJ 07102
Telephone: (973) 565-2183
Facsimile: (973) 622-5314
E-mail: jbernstein@mdmc-law.com
   eberman@mdmc-law.com
*Counsel to Defendant New Jersey Economic Development Authority*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT..................................................................................1

STATEMENT OF FACTS ....................................................................................3

ARGUMENT .......................................................................................15

Standard of Review..........................................................................15

I.    THE NEW JERSEY CONTRACTUAL LIABILITY ACT BARS THIS
      ACTION. ...................................................................................15

II.   UNDER THE TERMS OF THE GRANT AGREEMENTS, DUE TO
      BB&B'S FAILURE TO MAINTAIN SUFFICIENT JOBS, NJEDA WAS
      PERMITTED TO TERMINATE THOSE AGREEMENTS AND, AS SET
      FORTH IN THE AGREEMENTS, ALL PAYMENT OR CREDITS
      THAT WOULD OTHERWISE BE DUE ARE FORFEITED ......................19

CONCLUSION ....................................................................................22

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*County of Hudson v. State, Dep't of Corrections*,
   208 N.J. 1 (2011) ...................................................................................... 15-16, 18

*Jablonski v. Pan Am. World Airways, Inc.*,
   863 F.2d 289 (3d Cir. 1988) ...............................................................................15

*Perrigo Co. v. Abbvie Inc.*,
   No. 21-3026, 2022 U.S. App. LEXIS 20098 (3d Cir. July 5, 2022) ....................3

*Rosenau v. Unifund Corp.*,
   539 F.3d 218 (3d Cir. 2008) ...............................................................................15

*Szczurek v. Prof'l Mgmt.*,
   627 Fed. Appx. 57 (3d Cir. 2015)........................................................................15


**Statutes and Rules**

N.J.S.A. 34:1B-4 ....................................................................................................16

N.J.S.A. 34:1B-120 ..................................................................................................4

N.J.S.A. 59:13-1 et seq. ....................................................................................*passim*

Fed. R. Civ. P. 12(c)...........................................................................................1, 15

Fed. R. Bank. P. 7012(b)....................................................................................1, 15

Defendant New Jersey Economic Development Authority ("Defendant" or "NJEDA") submits this memorandum of law in support of its motion pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure and Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings with respect to the claims asserted by Michael Goldberg, as Plan Administrator ("PA") for 20230930-DK-BUTTERFLY-1, Inc. f/k/a Bed Bath & Beyond, Inc. ("BB&B").

## PRELIMINARY STATEMENT

On June 3, 2024, the PA filed the Complaint in this adversary proceeding.[1] The PA seeks from NJEDA approximately $19.3 million in damages, asserting one claim for breach of contract based on the PA's allegations that NJEDA breached two contracts with BB&B, and asserting a second claim pursuant to 11 U.S.C. §542 for turnover of property that is allegedly due and owing to the PA based on the very same alleged breaches of these very same contracts.

NJEDA seeks judgment on the pleadings with respect to the PA's claims for two independent reasons.

First, under the New Jersey Contractual Liability Act, N.J.S.A. 59:13-1 *et seq.*, the PA (and BB&B) may not bring any action for breach of contract against the NJEDA without first providing written notice to NJEDA.  No such notice was given.

---

[1]    The Complaint is attached to the Declaration of Eliott Berman, dated December 6, 2024, submitted herewith (the "Berman Decl.") at Exhibit 1.

In addition, inasmuch as over one year has passed from the accrual of the PA's asserted claims without prior written notice being provided to NJEDA, the PA's failure to give notice cannot be cured, necessitating the dismissal of the PA's claims with prejudice.

Second, the PA does not dispute two facts that mandate dismissal of his claims. First, as set forth in the termination notices attached as Exhibit D to the PA's Complaint and made clear by BB&B's annual reports for 2021 and 2022, which are referenced in those termination notices, BB&B breached its agreements with NJEDA by not employing the minimum number of employees in 2021 and 2022 required under those agreements. *Indeed, the PA does not allege otherwise and asserts that BB&B and its affiliates "met all of the job creation and other requirements for years 2007 through at least 2020."* Complaint ¶24 (emphasis added). As set forth in the Complaint and the termination notices attached thereto, the termination of the grant agreements entered into by NJEDA and BB&B (and its affiliates) was based on the failure of BB&B and its affiliates "to meet the job creation and other requirements" for years 2021-2022. Second, under the terms of those grant agreements and New Jersey law (which is incorporated by referenced in those agreements) all awards, such as tax credits, that would otherwise be due to BB&B (or the PA) had BB&B not breached those contracts are forfeited. For this additional reason, the PA's Complaint should be dismissed with prejudice.

2

## STATEMENT OF FACTS[2]

On or about December 4, 2006, NJEDA entered into two grant agreements, one with Christmas Trees Shops, Inc. ("CTS") (the "P17285 Grant Agreement") and one with BB&B (the "P17286 Grant Agreement"). The P17286 Grant Agreement is attached to the Greitz Declaration at Exhibit 1.[3]

Inasmuch as in November 2020, CTS (the only grantee in the P17285 Grant Agreement) was sold to an unrelated entity that is not affiliated with BB&B, BB&B cannot (and no entity affiliated with BB&B can) assume any incentive payments and/or tax credits that would otherwise be due under the P17285 Grant Agreement, which was confirmed in a letter issued by NJEDA to BB&B on April 26, 2023. *See* Greitz Decl. ¶4 and Ex. 2.

On July 25, 2011, NJEDA entered into another grant agreement with the following entities: (i) BB&B, (ii) Bed Bath & Beyond of California Limited Liability Company, (iii) Bed Bath & Beyond Procurement Co., (iv) BBB Value Services Inc.,

---

[2]    The facts set forth above are based on the facts alleged in the Complaint and the Answer (which are attached to the Berman Declaration at Exhibits 1 and 2), the facts set forth in the documents referenced in those documents, which include the documents attached to the Declaration of Susan Greitz, dated December 6, 2024, submitted herewith (the "Greitz Decl."), and facts of which the Court may take judicial notice. *See Perrigo Co. v. Abbvie Inc.*, No. 21-3026, 2022 U.S. App. LEXIS 20098, at *5 n.6 (3d Cir. July 5, 2022). NJEDA does not hereby admit to any of facts alleged in the Complaint.

[3]    The P17285 Grant Agreement is attached at Exhibit A to the Complaint. Berman Decl. Ex. 1 at Exhibit A.

(v) Buy Buy Baby Stores Inc., (vi) Harmon Stores Inc., and (vii) CTS (the "P36408 Grant Agreement"). The P36408 Grant Agreement is attached to the Greitz Declaration at Exhibit 3.[4]

As set forth in the P17286 Grant Agreement and the P36408 Grant Agreement, and pursuant to the Business Employment Incentive Program Act, N.J.S.A. 34:1B-120 *et seq.* (the "BEIP Act"), the State of New Jersey provides grants to the grantees under the conditions set forth in those agreements and pursuant to the BEIP Act. Under these grant agreements and pursuant to the BEIP Act, in order to obtain benefits under these grant agreements, the grantees must satisfy detailed conditions in connection with fostering job creation in the State of New Jersey – both with respect to (a) maintaining a certain number of full-time existing employees and annually adding a minimum of additional full-time employees, and (b) timely submitting to NJEDA detailed reporting requirements in connection thereto. *See* Greitz Decl. ¶6 and Exhibits 1 and 3.

These conditions must be met for fifteen years (the "Commitment Duration" as defined in the P17286 Grant Agreement and the P36408 Grant Agreement) beginning from the Eligibility Determination Date as defined in the P17286 Grant Agreement and the P36408 Grant Agreement. *See* Greitz Dec. ¶7; Ex. 1 at p.3; Ex.

---

[4]     The P36408 Grant Agreement is also attached at Exhibit B to the Complaint. *See* Berman Decl. Ex. 1 at Exhibit B.

4

3 at p.2.  The Eligibility Determination Date for the P17286 Grant Agreement was

October 18, 2009, and thus the Commitment Duration would end on October 18,

2024.   Greitz Dec. ¶8.  The Eligibility Determination Date for the P36408 Grant

Agreement was November 15, 2011, and thus the Commitment Duration would end

on November 15, 2026.   Greitz Dec. ¶9.

Section 3 of the P17286 Grant Agreement and the P36408 Grant Agreement

contains detailed annual reporting requirements of the grantees under those

agreements. *See* Greitz Decl. Ex. 1 at Section 3, Ex. 3 at Section 3.

Sections 4E and 4F of the P17286 Grant Agreement and the P36408 Grant

Agreement contain "Conditions to Grant" and "Conditions Subsequent," and state

as follows:

E.    Conditions To Grant. The obligation of Grantor to make the Grant
Payment with respect to each and every Grant Year, and the right of Grantee
to receive and retain same, shall be conditional upon satisfaction of each of
the following conditions:

1. The Legislature has appropriated monies for the Grant with respect
to such Grant Year or the Grantor has issued bonds pursuant to the Act;
2. The State Treasurer has certified the amount of the Withholdings for
such Grant Year, as required by Section 10 of the Act;
3. No Events of Default have occurred and remain uncured, unless all
such defaults have been expressly waived by Grantor in writing, in its sole
discretion;
4. Grantee has delivered to Grantor the Certification of Compliance;
and,
5. No demand has been made by Grantor for recapture of any Grant
Payment for any previous Grant Year.

F.      Conditions Subsequent. The entitlement of Grantee to retain any Grant
Payment previously received by it hereunder with respect to each and every
Grant Year shall be conditional upon the continuous compliance by it with the
Minimum Eligibility Threshold made by Grantee during the remainder of the
Commitment Duration, unless expressly waived in writing by Grantor.

Greitz Decl. Ex. 1 at Section 4E-F; Ex. 3 at Section 4E-F.

Section 6 of the P17286 Grant Agreement and the P36408 Grant Agreement

contains the following "Covenants of Grantee" and states as follows:

**6.      Covenants of Grantee.**  Grantee covenants and agrees that:
A.      It shall meet and satisfy the Minimum Eligibility Threshold no later
than the expiration of the Base Years and continue to satisfy the Minimum
Eligibility Threshold at all times up to the expiration of the Commitment
Duration;
B.      It shall maintain at least 80% of the Base Employment Number at all
times up to the expiration of the Commitment Duration. The Grantor shall apply
any job creation above the New Employment Commitment at the Project against
any losses in the Base Employment Number when determining whether Grantee
has fallen below 80 percent of the Base Employment Number.
C.      The Grantee shall maintain a net increase of employees at the Project
at all times up to the expiration of the Commitment Duration. Any reductions in
the employment level of the non-eligible employees that existed prior to approval
of the Grant, must be deducted from the amount of New Employees in Eligible
Positions for each year of the Grant Term.
D.      Grantee shall at all times during the Base Years and during the
Commitment Duration satisfy all eligibility criteria under the Act and
Regulations upon which Grantor relied in determining to make the Grant.

Greitz Decl. Ex. 1 at Section 6A-D; Ex. 3 at Section 6A-D.  Accordingly, a covenant

of BB&B under both the P17286 Grant Agreement and the P36408 Grant Agreement

was that the grantees under each agreement must "maintain at least 80% of the Base

Employment Number at all times up to the expiration of the Commitment Duration."

Greitz Decl. Ex. 1 at Section 6B; Ex. 3 at Section 6B.  The Base Employment

Number for P17286 was 2,600, such that 80% of the Base Employment Number is

2,080.  Greitz Decl. ¶10 and Ex. 4.[5]  The Base Employment Number for P36408 was

2,440, such that 80% of the Base Employment Number is 1,952.  Greitz Decl. ¶10

and Ex. 3 at Exhibit A.

Notably, the P36408 Grant Agreement contains the following additional

covenant in Section 6 of that Agreement:

> G.    It is specifically understood and agreed that this Grant is cross-defaulted with any existing assistance and any new assistance provided by the Authority to the Recipient and/or any of its subsidiaries.

Greitz Decl. Ex. 3 at Section 6G.  Accordingly, under the cross-default provision in

Section 6G of the P36408 Grant Agreement, any default under the P17286 Grant

Agreement would constitute a default under the P36408 Grant Agreement.  Greitz

Decl. ¶11 and Ex. 3 at Section 6G.

Section 14 of the P17286 Grant Agreement sets forth what constitutes an

"Event of Default" under that agreement, including the following:

> **14. <u>Default</u>**. Any one or more of the following shall constitute an event of default ("Event of Default") if the default is not cured within thirty (30) days after written notice of the default, provided, however, that said thirty (30) day period shall be extended an additional ninety (90) days if Grantee commences to cure the default within said thirty (30) day period and is diligently proceeding to cure the same.

---

[5]    While Exhibit A to the original December 4, 2006 P17286 Grant Agreement established the base employment number for this grant at 437 (Greitz Decl. Ex. 1 at Exhibit A), that number was later changed to 2,600 per the letter from BB&B to NJEDA that is attached at Exhibit 4 to the Greitz Declaration.

A.    If the Minimum Eligibility Threshold[6] is maintained at none of the Project locations listed on Exhibit A for the Commitment Duration; provided that no Grant Payments shall be due or paid for any location that falls below the Minimum Eligibility Threshold requirement for that Project location;

B.    If Grantee fails to maintain 80% of the Base Employment Commitment;

C.    If Grantee has breached or failed to perform any other covenant or promise under this Agreement, except in the event the Grantee fails to maintain the New Employment Commitment which shall be subject to the provisions of Section 4B;

.  .  .

F.    The failure of Grantee to timely submit the documents, materials, and information required to be submitted by this Agreement.

H.    If any Event of Default, as defined hereunder, has occurred and remains uncured under any other agreement entered into between Grantor and Grantee or under any PEO Agreement relating to the BEIP Grant.

Greitz Decl. Ex. 1 at Section 14.

Accordingly, under Section 14H of the P17286 Grant Agreement, an Event of Default that remains uncured under the P36408 Grant Agreement would constitute an Event of Default of the P17286 Grant Agreement.  Greitz Decl. ¶11 and Ex. 1 at Section 14H.

These Events of Default also appear in the P36408 Grant Agreement[7] with one exception.  Section 14B of the P36408 Grant Agreement states as follows:

---

[6]    The Minimum Eligibility Threshold referenced in Section 14A in both the P17286 Grant Agreement and the P36408 Grant Agreement is 25 full-time employees.  *See* Greitz Decl. Ex. 1 at p.5 (definition of "Minimum Eligibility Threshold") and at Ex. A; Ex. 3 at p.3 (definition of "Minimum Eligibility Threshold") and at Ex. A.

[7]    Accordingly, under Section 14H of the P36408 Grant Agreement, an Event of Default that remains uncured under the P17286 Grant Agreement would constitute

B.      If the number of employees employed in New Jersey by Grantee and its affiliates excluding New Employees under the Grant falls below 80% of the Base Employment Number; provided that the Grantor shall apply any job creation at the Project above the New Employment Commitment, or at the request of the Grantee, the Minimum Eligibility Threshold, against any losses in the Base Employment Number when determining whether employment has fallen below 80% of the Base Employment Number; and provided further that no New Employees included in determining 80% of the Base Employment Number shall be included for payment under the Grant.

Greitz Decl. Ex. 3 at Section 14B.  In addition, Section 14 of the P36408 Grant

Agreement contains the following provision that is not in Section 14 of the

P17286 Grant Agreement:

K.      If the Grantee is in default under any existing or future assistance provided by Grantor to Grantee and/or any of its subsidiaries, including but not limited to, entities that may not be related to Grantee and/or any of its subsidiaries, but contain common principals.

Greitz Decl. Ex. 3 at Section 14K.  Accordingly, under Section 14K of the P36408

Grant Agreement, a default by BB&B under the P17286 Grant Agreement would

constitute an Event of Default under the P36408 Grant Agreement.  Greitz Decl.

¶11 and Ex. 3 at Section 14K.

Section 15 of the P17286 Grant Agreement and the P36408 Grant

Agreement sets forth the "Remedies Upon Default" and states in pertinent part as

follows:

**15.    Remedies Upon Default.** Upon the existence of any Event or Events of Default, the Grantor may, in its sole and absolute discretion, do any of the

---

an Event of Default of the P36408 Grant Agreement.  Greitz Decl. ¶11 and Ex. 3 at Section 14H.

following, alone or in combination, after having first given Grantee notice and opportunity to cure the default in accordance with Paragraph 14 hereof:

A.      For Events of Default pursuant to Sections 14(A) through 14(H):

. . . .

(3)      withhold payment of all Grant payments not yet paid at the time of the default during such time as an Event or Events of Default remain uncured;

(4)      terminate the agreement; and

(5)      take any other action legally available to it;

. . . .

Greitz Decl. Ex. 1 at Section 15; Ex. 3 at Section 15.  Section 15B of the P36408

Grant Agreement contains the following additional provision regarding Remedies

Upon Default":

B.      For Events of Default pursuant to Sections 14(I) through 14(K):

(1)      at the Grantor's discretion, any remedy listed above in subsection A(1) through (5); and

(2)      require the Grantee to repay the entire amount of the Grant previously paid to Grantee under this Agreement, plus interest and any cost of collection;

Greitz Decl. Ex. 3 at Section 15B.  Accordingly, under Section 15B of the P36408

Grant Agreement, a default under the P17286 Grant Agreement (pursuant to

Section 14K of the P36408 Grant Agreement) would also allow NJEDA to

terminate the P36408 Grant Agreement and withhold any payment not yet made

under that agreement.  Greitz Decl. Ex. 3 at Section 15B.

Section 15D of the P17286 Grant Agreement and the P36408 Grant

Agreement states as follows: "The Grantor's rights under this Section 15 shall

survive termination of the Agreement." Greitz Decl. Ex. 1 at Section 15D; Ex. 3 at Section 15D.

Section 17 of the P17286 Grant Agreement and the P36408 Grant Agreement states as follows:

> **17.    Forbearance Not a Waiver.** No act of forbearance or failure to insist on the prompt performance by the Grantee of its obligations pursuant to this Agreement, either express or implied, shall be construed as a waiver by the Grantor of any of its rights hereunder. In the event that any provision of this Agreement should be breached by Grantee and the breach may thereafter be waived by Grantor, such waiver shall be limited to the particular breach waived by Grantor and shall not be deemed to waive any other breach.

Greitz Decl. Ex. 1 at Section 17; Ex. 3 at Section 17.

Section 23H of the P17286 Grant Agreement and the P36408 Grant Agreement states as follows:

> H.  Contractual Liability Act. The rights and remedies of the Grantee under this Agreement shall be subject to the New Jersey Contractual Liability Act, N.J.S.A. 59:13-1 et seq., the provisions of which are hereby incorporated herein by reference.

Greitz Decl. Ex. 1 at Section 23H; Ex. 3 at Section 23H.

The P17286 Grant Agreement and the P36408 Grant Agreement were each amended on or about June 9, 2016 (the "June 9, 2016 Amendments"), to reflect the fact that the grants that were to be awarded by NJEDA were being converted to a tax credit against the tax liability otherwise due pursuant to Section 5 of P.L. 1945 c. 162 (C.54:10A-5). The June 9, 2016 Amendments to the P17286 Grant Agreement

and the P36408 Grant Agreement are attached to the Greitz Declaration at Exhibits 5 and 6, respectively.[8]

On or about February 6, 2023, the parties to the P36408 Grant Agreement entered into an amendment to the P36408 Grant Agreement, whereby certain changes to names of the grantees were made. A copy of the February 6, 2023 amendment to the P36408 Grant Agreement is attached to the Greitz Declaration at Ex. 7.

With respect to 2021 Annual Report for the P17286 Grant Agreement submitted to NJEDA by BB&B in connection with BB&B's obligations under that agreement, NJEDA issued to BB&B, on January 18, 2023, a default notice regarding missing required information in such report. Greitz Decl. ¶14 and Ex. 8. On March 13, 2023, NJEDA issued to BB&B a second default notice regarding missing required information in such report. *Id.* Ex. 9.

With respect to 2021 Annual Report for the P36408 Grant Agreement submitted to NJEDA by BB&B in connection with BB&B's obligations under that agreement, NJEDA issued to BB&B, on December 7, 2022, a default notice regarding missing required information in such report. Greitz Decl. ¶15 and Ex. 10.

---

[8]    There was also a June 9, 2016 amendment to the P17285 Agreement, which was attached as part of Exhibit C to the Complaint. *See* Berman Decl. Ex. 1 at Exhibit C. The June 9, 2016 Amendment to the P17286 Grant Agreement is also attached as part of Exhibit C to the Complaint. *Id.*

On March 28, 2023, NJEDA issued BB&B a second default notice regarding missing required information in such report. Greitz Decl. Ex. 11.

Following the issuance of these default notices NJEDA had discussions with BB&B and its representative from Deloitte regarding defaults in connection with the P17286 Grant Agreement and the P36408 Grant Agreement. *See* Greitz Decl. ¶16. On July 10, 2023, NJEDA informed BB&B that based on the grantees' failure to reach the minimum number of employees pursuant to these agreements for multiple years, NJEDA would be issuing termination letters with respect to those agreements. *Id.* Ex. 12.

On or about August 7, 2023, NJEDA issued two termination letters to BB&B, one with respect to the P17286 Grant Agreement (the "P17286 Termination Letter") and one with respect to the P36408 Grant Agreement (the "P36408 Termination Letter" and, collectively, the "August 7, 2023 Termination Letters"). The August 7, 2023 Termination Letters are attached to the Greitz Declaration at Exhibits 13 and 14.[9]

As reflected in the August 7, 2023 Termination Letters, pursuant to N.J.A.C. 19:31-10.6 (and pursuant to the P17286 Grant Agreement and the P36408 Grant Agreement as detailed above), based on the annual reports submitted by BB&B for

---

[9]    The August 7, 2023 Termination Letters are also attached at Exhibit D to the Complaint. Berman Decl. Ex. 1 at Exhibit D.

2021 and 2022, "the company fell below 80% of the base employment number and below the minimum number of eligible positions."  Greitz Decl. Ex. 13 at p.1; Ex. 14 at p.1.[10]

As set forth in the August 7, 2023 Termination Letters, inasmuch as BB&B failed to have the requisite jobs for both 2021 and 2022 with respect to both the P17286 Grant Agreement and the P36408 Grant Agreement, on August 7, 2023, NJEDA terminated both agreements effective immediately and stated that, as set forth in those agreements, NJEDA would withhold all accrued but unpaid liabilities, and that the parties will have no further obligations to each other under the Agreements.  Greitz Decl. Ex. 13 at p.2; Ex. 14 at p.2.

After NJEDA issued the August 7, 2023 Termination Letters, BB&B did not notify NJEDA in writing that it disputed the August 7, 2023 Termination Letters, including the occurrence of the events of defaults and the statements therein that NJEDA would withhold all accrued but unpaid liabilities, and that the parties will have no further obligations to each other under the Agreements.   Greitz Decl. ¶18. Indeed, the first written statement received by NJEDA from BB&B (or the Plan

---

[10]     As indicated *supra*, 80% of the base employment number for the P17286 Grant Agreement is 2,080 (Greitz Decl. ¶10 and Ex. 4) and 80% of the base employment number for P36408 is 1,952 (*id.* ¶10 and Ex. 3 at Exhibit A).  As also indicated *supra*, the minimum number of eligible positions for both the P17286 Grant Agreement and the P36408 Grant Agreement is twenty-five.  *See* Greitz Decl. Ex. 1 at p.5 (definition of "Minimum Eligibility Threshold") and at Exhibit A; Ex. 3 at p.3 (definition of "Minimum Eligibility Threshold") and at Exhibit A.

Administrator) that alleged that NJEDA's termination was wrongful was the
Complaint filed herein by the PA against NJEDA.  *Id.*

## ARGUMENT

### Standard of Review

Under Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, Rule 12(c)
of the Federal Rules of Civil Procedure is applicable to adversary proceedings.  Fed.
R. Bank. P. 7012(b).  Rule 12(c) of the Federal Rules of Civil Procedure provides
that "[a]fter the pleadings are closed but within such time as not to delay the trial,
any party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  When
making a motion for judgment on the pleadings, the motion will be granted if the
movant establishes that (a) there are no material issues of fact that remain to be
resolved, and (b) the movant is entitled to judgment as a matter of law.  *Szczurek v.
Prof'l Mgmt.*, 627 Fed. Appx. 57, 60 (3d Cir. 2015); *Rosenau v. Unifund Corp.*, 539
F.3d 218, 221 (3d Cir. 2008); *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d
289, 290 (3d Cir. 1988).

## I.    THE NEW JERSEY CONTRACTUAL LIABILITY ACT BARS THIS ACTION.

The New Jersey Contractual Liability Act, <u>N.J.S.A.</u> 59:13-1 *et seq.* (the
"NJCLA"), "effects a limited waiver of sovereign immunity.  It permits suits based
on contracts to be filed against the State, but requires compliance with its statutory

terms as a prerequisite for commencing any such litigation." *County of Hudson v. State, Dep't of Corrections*, 208 N.J. 1, 13 (2011).

This adversary proceeding is premised on the PA's claim that NJEDA has breached the contracts it entered into with BB&B, namely the P17286 Grant Agreement and the P36408 Grant Agreement.[11]  As demonstrated below, the PA's claim for breach of contract is precluded by the NJCLA.

NJEDA is an "instrumentality of the State" (N.J.S.A. 34:1B-4) and thus within the broad definition of the "State" that is subject to the NJCLA.  *See* <u>N.J.S.A.</u> 59:13-2.  Indeed, as demonstrated above, both the P17286 Grant Agreement and the P36408 Grant Agreement state that "[t]he rights and remedies of the Grantee under this Agreement shall be subject to the New Jersey Contractual Liability Act, <u>N.J.S.A.</u> 59:13-1 <u>et seq.</u>, the provisions of which are hereby incorporated herein by reference." Greitz Decl. Ex. 1 at Section 23H; Ex. 3 at Section 23H.

Section 5 of the NJCLA provides as follows:

> "It shall be the responsibility of parties contracting with the State to promptly **notify the State in writing** of any situation or occurrence which may potentially result in the submission of a claim against the State.

---

[11]     To be sure, in addition to a claim for "breach of contract," the PA has asserted a claim for "Turnover of Property Pursuant to 11 U.S.C. §542." Berman Decl. Ex. 1 at ¶¶34-40.  But, as made abundantly clear in the Complaint, the claim for turnover is premised on the PA's allegations that NJEDA breached its contracts with BB&B. Indeed, the alleged "debt" and/or "BEIP Refund" in the PA's claim for turnover is identical to the amount alleged in the PA's claim for breach of contact.  *Id.* at p.10 ("Prayer for Relief, sections (i) and (ii)).  Accordingly, if the PA's claim for breach of contract is defective as a matter of law, so too is the claim for turnover.

**Except as otherwise provided in section 6, no notice of claim for breach of contract, either express or implied in fact, shall be filed with the contracting agency later than 90 days after the accrual of such claim.** A notice of claim shall include the following information: the name of the claimant, the nature of the claim, specific reasons for making the claim, and the total dollar amount of the claim if known. After the expiration of 90 days from the date the notice of claim is received by the contracting agency, the claimant may file suit in a court of competent jurisdiction of the State of New Jersey.

**In all contract claims against the State, the claimant shall be forever barred from recovering against the State if:**

**a. he fails to notify the appropriate contracting agency within 90 days of accrual of his claim except as otherwise provided in section 6 hereof**; or …'

N.J.S.A. 59:13-5 (emphasis added).

Section 6 of the NJCLA provides as follows:

"A claimant who fails to file notice of his claim within 90 days as provided in section 6 of this chapter, may, in the discretion of a judge of the Superior Court of the State of New Jersey, be permitted to file such notice at any time **within 1 year after the accrual of his claim** provided that the State has not been substantially prejudiced thereby. Application to a judge of the superior court for permission to file a late notice of claim shall be made upon motion based upon affidavits setting forth sufficient reason for the failure to file his notice of claim within the period of time prescribed by section 6 of this chapter.

N.J.S.A. 59:13-6 (emphasis added).

Section 2 of the NJCLA states "'[a]ccrual of claim' shall mean the date on which the claim arose and shall not be affected by the notice provisions contained herein." N.J.S.A. 59:13-2.

17

Here, despite the fact that the claim asserted by the Plan Administrator arose on the date the termination letters were issued to BB&B – August 7, 2023 – BB&B (and the Plan Administrator) never "notif[ied NJEDA] in writing of any situation or occurrence which may potentially result in the submission of a claim against [NJEDA]." N.J.S.A. 59:13-5.  *See* Greitz Decl. ¶18.  **Indeed, the Complaint does not allege otherwise.**  In fact, the first notification in writing by BB&B or the PA of any dispute regarding the August 7, 2023 Termination Letters or of any situation or occurrence that may potentially result in the submission of a claim against NJEDA was the filing of this action.  *Id.*

Inasmuch as three months have passed since issuance of the August 7, 2023 Termination Letters, the PA's claims in this action must be dismissed.  N.J.S.A. 59:13-5.  Indeed, inasmuch as more than a year has elapsed since the accrual the claim, the PA cannot take advantage of the safe harbor provided in Section 6 of the NJCLA.  Accordingly, the PA's Complaint should be dismissed with prejudice.[12]

---

[12]    To be sure, the PA filed his claim on June 3, 2024, within a year of issuance of the August 7, 2023 Termination Letters, but the statute and case law is clear that a claimant must notify the State of a potential claim *before* filing a claim in court. N.J.S.A. 59:13-5; *County of Hudson v. State, Dep't of Corrections*, 208 N.J. 1, 23 (2011).

**II.    UNDER THE TERMS OF THE GRANT AGREEMENTS, DUE TO BB&B'S FAILURE TO MAINTAIN SUFFICIENT JOBS, NJEDA WAS PERMITTED TO TERMINATE THOSE AGREEMENTS AND, AS SET FORTH IN THE AGREEMENTS, ALL PAYMENT OR CREDITS THAT WOULD OTHERWISE BE DUE ARE FORFEITED.**

Even if the NJCLA did not preclude this action, the PA's claims fail as a matter of law because the P17286 Grant Agreement and the P36408 Grant Agreement permit NJEDA to terminate both agreements if there is an Event of Default, which indisputably occurred, and under those Agreements, all monies or credits that would otherwise be due thereunder are forfeited.

As demonstrated above, BB&B and its affiliates failed to maintain sufficient jobs under both the P17286 Grant Agreement and the P36408 Grant Agreement for both 2021 and 2022.  Indeed, the PA does not allege otherwise and alleges only that *before 2021*, BB&B and its affiliates "met all of the job creation and other requirements."  Berman Decl. Ex. 1 ¶24.

While BB&B breached *both* the P17286 Grant Agreement and the P36408 Grant Agreement for *two successive years* and the PA does not allege otherwise, the provisions under those Agreements permit termination of both agreements even if there is only an Event of Default under *one* agreement (*see*, *e.g.*, Greitz Decl. Ex. 1 at §14H; Ex. 3 at §§6G, 14H, 14K) for *one year* (*see*, *e.g.*, *id.* Ex. 1 at §§6A, 6B, 6C, 14B, 14C; Ex. 3 at §§6A, 6B, 6C, 14B, 14C).

Although the PA essentially admits that it did not meet the "job creation and other requirements" for 2021 and 2022, it alleges that NJEDA wrongfully terminated the P17286 Grant Agreement and the P36408 Grant Agreement because it failed to first provide notice of default to BB&B and give it an opportunity to cure. Berman Decl. Ex. 1 ¶¶31-32. The PA's allegation regarding failure to give notice is without merit.

First, NJEDA *did* provide notices of default with respect to the P17286 Grant Agreement and the P36408 Grant Agreement with regard to BB&B's 2021 annual reports. Greitz Decl. ¶¶14-15 and Exhibits 8-11.

Second, the PA confuses reporting requirements violations and job creation violations. While defective and incomplete reports, which are to be filed each year in March regarding jobs maintained in the *prior* year could potentially be cured and completed, the obligation to maintain a certain minimum number of jobs in 2021 cannot be cured in 2022 or thereafter. *See*, *e.g.*, Greitz Decl. Ex. 12. Similarly, the failure to maintain the minimum number of jobs in 2022 cannot be cured in 2023 or thereafter. *Id.* Accordingly, once NJEDA confirmed by reviewing the annual reports (and any revisions to the annual reports) that BB&B failed to maintain the requisite minimum number of jobs, NJEDA was within its rights to terminate those agreements pursuant to Sections 14B and 15A(4) of both the P17286 Grant Agreement and the P36408 Grant Agreement. Indeed, the PA does not and cannot

allege that it met the job requirements for either 2021 or 2022 for either the P17286 Grant Agreement or the P36408 Grant Agreement.

Finally, under Sections 15A(3) and 15B(1) of the P17286 Grant Agreement and the P36408 Grant Agreement, NJEDA may "withhold payment of all Grant payments not yet paid at the time of default during such time as an Event or Events of Default remain uncured."[13]  Inasmuch as the failure to maintain the minimum number of jobs in 2021 and 2022 cannot be cured in 2022 and 2023, respectively, or thereafter, BB&B has forfeited all its benefits under those agreements.

Accordingly, as demonstrated in the Complaint, and the P17286 Grant Agreement and the P36408 Grant Agreement referenced therein, the PA's claims for breach of contract and turnover based on that breach of contract fail as a matter of law under the terms of those agreements.

---

[13]    As stated *supra*, pursuant to Section 14H of the P17286 Grant Agreement and Sections 6G, 14H, 14K, and 15B of the P36408 Grant Agreement, a default under either agreement would allow NJEDA to terminate both agreements and withhold any payment or tax credit not yet made under both agreements. *See* Greitz Decl. ¶11; Ex. 1 at Section 14H; Ex. 3 at Sections 6G, 14H, 14K, 15B.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Plan Administrator's Complaint should be dismissed with prejudice.

<div style="margin-left:40%">

**McELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP**

</div>

Dated: December 6, 2024

<div style="margin-left:40%">

*/s/ Jeffrey Bernstein*

Jeffrey Bernstein, Esq.
Eliott Berman, Esq. (admitted *pro hac vice*)
570 Broad Street, Suite 1401
Newark, NJ 07102
Telephone: (973) 565-2183
Facsimile: (973) 622-5314
E-mail: jbernstein@mdmc-law.com
           eberman@mdmc-law.com
*Counsel to New Jersey Economic
Development Authority*

</div>