**THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re:<br><br>20230930-DK-BUTTERFLY-1, INC., f/k/a<br>BED BATH & BEYOND INC., *et al.*,<br><br>                            Debtors. | Chapter 11<br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |
| MICHAEL GOLDBERG, as Plan<br>Administrator for 20230930-DK-<br>BUTTERFLY-1, INC., f/k/a Bed Bath &<br>Beyond Inc.,<br>                           Plaintiff,<br><br>       v.<br><br>NEW JERSEY ECONOMIC<br>DEVELOPMENT AUTHORITY,<br><br>                         Defendant. | Adv. No. 24-01443-VFP |

---

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

---

**McELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP**
Jeffrey Bernstein, Esq.
Eliott Berman, Esq. (admitted *pro hac vice*)
570 Broad Street, Suite 1401
Newark, NJ 07102
Telephone: (973) 565-2183
Facsimile: (973) 622-5314
E-mail: jbernstein@mdmc-law.com
       eberman@mdmc-law.com
*Counsel to Defendant New Jersey Economic
Development Authority*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................... ii

PRELIMINARY STATEMENT ................................................................. 1

PROCEDURAL HISTORY ...................................................................... 5

STATEMENT OF FACTS ........................................................................ 8

ARGUMENT .......................................................................................... 22

Legal Standard ...................................................................................... 22

I.      THE NEW JERSEY CONTRACTUAL LIABILITY ACT BARS THIS
        ACTION. ...................................................................................... 22

    A. Plaintiff and BBB Failed to Provide Written Notice to Defendant as
       Required by the NJCLA ............................................................... 24

    B. Plaintiff Failed to Provide Any Notice Within Three Months of the Accrual
       of Its Claims as Required by the NJCLA ..................................... 30

II.     UNDER THE TERMS OF THE GRANT AGREEMENTS, DUE TO
        BB&B'S FAILURE TO MAINTAIN SUFFICIENT JOBS IN 2021 AND
        2022, ALL PAYMENT OR CREDITS THAT WOULD OTHERWISE BE
        DUE ARE FORFEITED ............................................................... 31

    A. The August 7 Letters Constitute Notice of Default ...................... 32

    B. Due to the Incurable Nature of BB&B's Default, NJEDA Was Not
       Obligated to Provide a Notice of Default ..................................... 34

CONCLUSION ....................................................................................... 38

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Borough of Princeton v. Board of Chosen Freeholders of Cnty. of Mercer*,
   333 N.J. Super. 310 (App. Div. 2000), *aff'd*, 169 N.J. 135 (2001) ....................37

*CBA Env't Servs. v. Toll Bros.*,
   403 F. Supp.3d 403 (D.N.J. 2019)......................................................................22

*County of Hudson v. State, Dep't of Corrections*,
   208 N.J. 1 (2011) ...........................................................................................25, 28

*County of Hudson v. Dep't of Corrections*,
   No. A-3511-05T2, 2007 N.J. Super. Unpub. LEXIS 913
   (App. Div. June 28, 2007)....................................................................................31

*Cumberland Cnty. Improvement Auth. v. GSP Recycling Co.*,
   358 N.J. Super. 484 (App. Div. 2003).................................................................37

*Dixon v. JPay, Inc.*,
   No. A-4498-19, 2022 N.J. Super. Unpub. LEXIS 806
   (App. Div. May 13, 2022)....................................................................................29

*D.D. v. University of Med. and Dentistry of NJ*,
   213 N.J. 130 (2013) .......................................................................................28, 29

*East Empire Constr. Inc. v. Borough Constr. Grp. LLC*,
   156 N.Y.S.3d 148 (App. Div. 2021).....................................................................36

*Foman v. Davis*,
   371 U.S. 178 (1962)...........................................................................................22

*Hardy ex. rel. Dowdell v. Abdul-Matin*,
   198 N.J. 95 (2009) .............................................................................................37

*Harry's Village, Inc. v. Egg Harbor Twp.*,
   89 N.J. 576 (1982) .........................................................................................33-34

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) .............................................................................22

*LJL Transp., Inc. v. Pilot Air Freight Corp.*,
   599 Pa. 546 (2009) ................................................................................36

*Porreca v. City of Millville*,
   419 N.J. Super. 212 (App. Div. 2011) ..................................................37

*Sea Tow Servs. Int'l v. Pontin*,
   607 F. Supp.2d 378 (E.D.N.Y. 2009) ....................................................36

*Twin Crest Grp. v. Del. Valley Urology, LLC*,
   No. 10-6350, 2013 U.S. Dist. LEXIS 175036
   (D.N.J. Dec. 12, 2013) ....................................................................35, 36

*Velez v. City of Jersey City*,
   358 N.J. Super. 224 (App. Div. 2003) ..................................................29

*Young Travelers Day Camps, Inc. v. Felsen*,
   118 N.J. Super. 304 (D. Ct. 1972) ............................................34, 35, 36

## Statutes and Rules

<u>N.J.S.A.</u> 59:8-5............................................................................................28

<u>N.J.S.A.</u> 59:13-1 <u>et seq.</u>..................................................................*passim*

Fed. R. Civ. P. 15(a)...............................................................................22

Fed. R. Bank. P. 7015 .............................................................................22

Defendant, New Jersey Economic Development Authority ("Defendant" or "NJEDA"), submits this memorandum of law in opposition to the Motion of Plaintiff, Michael Goldberg ("Plaintiff"), as Plan Administrator for 20230930-DK-BUTTERFLY-1, Inc., f/k/a Bed Bath & Beyond, Inc. ("BB&B"), for Leave to File Amended Complaint ("Motion").

## PRELIMINARY STATEMENT

After the Court dismissed Plaintiff's initial complaint (the "Initial Complaint") due to the provisions of the New Jersey Contractual Liability Act ("NJCLA"), which are incorporated by reference in the parties' grant agreements (the "Grant Agreements"), Plaintiff now moves for leave to file an amended complaint that is attached as Exhibit 1 to the Motion (the "Proposed Amended Complaint").  The Motion should be denied on futility grounds, as it is evident from the Proposed Amended Complaint that Plaintiff's claims against NJEDA are deficient, as a matter of law, for multiple independent reasons.

First, the Proposed Amended Complaint has not cured the defect that was the basis for the dismissal of the Initial Complaint – the NJCLA.

A.    Plaintiff asserts that substantial compliance with the provisions of the NJCLA is sufficient.  But while substantial compliance may indeed be sufficient, Plaintiff did not substantially comply with the NJCLA's provisions because Plaintiff (and BB&B) never provided a *written* notice to NJEDA before

1

commencing this action.  Plaintiff's Proposed Amended Complaint attaches many letters and emails from NJEDA to BB&B, but Plaintiff fails to attach or even reference *any writing* from BB&B or Plaintiff to NJEDA regarding "any situation or occurrence which may potentially result in the submission of a claim against" NJEDA as required by the NJCLA.  Plaintiff alleges that representatives of Plaintiff and BB&B had conference calls with NJEDA regarding "outstanding" or "unpaid" "tax credits," but the NJCLA requires *written* notice.  While at times substantial compliance with a notice requirement is sufficient, substantial compliance does not excuse a plaintiff from first sending a *written* notice before commencing litigation.  Indeed, Plaintiff does not cite one case where substantial compliance could be accomplished absent a written notice and New Jersey cases hold that substantial compliance cannot be accomplished without a written notice.

B.    Plaintiff essentially admits that BB&B did not maintain sufficient jobs in 2021 and 2022, but Plaintiff claims that NJEDA breached its obligations by failing to issue tax credits prior to BB&B's defaults under the Grant Agreements, which, according to Plaintiff "were owed long before the year 2021."  Motion at 16.  Assuming *for purposes of the Motion* that NJEDA breached its obligations under the Grant Agreements by not issuing tax credits to BB&B prior to BB&B's defaults thereunder, any action to recover such tax credits is barred by the NJCLA for the additional reason that BB&B (and Plaintiff) did not provide any notice

2

(even oral notice) within three months of the accrual of such claims, as required by the NJCLA.  The alleged (oral) notices Plaintiff asserts he or BB&B (or their representatives) provided in 2023 and 2024 before the filing of this action occurred years after the accrual of Plaintiff's claims for amounts purportedly "owed long before the year 2021," way past the NJCLA's three-month deadline.

Second, Plaintiff's claims are also barred by the Grant Agreements.

Under Section 4E(3) of the Grant Agreements, NJEDA has no obligation to make any Grant Payment (or issue any tax credit) if an "Event of Default" has occurred and remains uncured.  In addition, under Section 15A(3) of the Grant Agreement, upon an "Event of Default," NJEDA may withhold payment of all Grant Payments not yet paid (or issuance of all tax credits not yet issued) at the time of default during such time as the Event of Default remains uncured.

While Plaintiff does not contest that BB&B did not employ the minimum number of people required under the Grant Agreements in 2021 and 2022, he alleges that no Event of Default occurred because (according to Plaintiff) NJEDA failed to first issue a notice of default, which (according to Plaintiff) is required under the Grant Agreements, along with the passage of 30 days after issuance of such notice, before an "Event of Default" can be established.  But, as explained in Defendant's Supplemental Memorandum of Law Regarding the August 7, 2023 Letters (D.E. 42), there are two independent fatal flaws with Plaintiff's argument.

3

First, NJEDA did indeed provide such notice no later than August 7, 2023, when it issued letters to BB&B notifying it of its breaches under the Grant Agreements for not maintaining the minimum number of jobs required thereunder in both 2021 and 2022. Accordingly, it cannot be disputed that no later than September 6, 2023 (thirty days after issuance of the August 7, 2023 letters) an Event of Default that was not cured had occurred.

Second, under case law in and outside New Jersey, a notice of default that is otherwise required under the parties' agreement need not be provided when the default cannot be cured. Here, Plaintiff does not and cannot contest that BB&B's failure to employ the minimum number of people required under the Grant Agreements in 2021 and 2022 cannot be cured in 2023 or thereafter. Accordingly, under Sections 4E(3) and 15A(3) of the Grant Agreements, Plaintiff is under no obligation to now issue and may withhold any tax credits not previously issued.

Finally, Plaintiff's argument that BB&B's defaults under the Grant Agreements cannot excuse NJEDA's alleged failure to previously issue certain tax credits that were allegedly due prior to such defaults is without merit. Putting aside that this argument does not cure the fatal flaws under the NJCLA, as the Court already stated at the oral argument regarding NJEDA's motion for judgment on the pleadings, the parties agreed to the forfeiture provisions in the Grant Agreements and Plaintiff cannot now rewrite these provisions.

4

## <u>PROCEDURAL HISTORY</u>

On June 3, 2024, Plaintiff filed his Initial Complaint against NJEDA.  *See* D.E. 1.

On August 15, 2024, NJEDA filed its Answer to Plaintiff's Initial Complaint.  *See* D.E. 19.

On December 6, 2024, NJEDA filed a motion for judgment on the pleadings. *See* D.E. 22, 24, 25.  On December 20, 2024, Plaintiff filed his opposition (D.E. 30) to NJEDA's motion for judgment on the pleadings, and on December 31, 2024, NJEDA filed its reply (D.E. 31) in further support of its motion for judgment on the pleadings.

In its memoranda in support of its motion for judgment on the pleadings (D.E. 22-1, 31), NJEDA provided two reasons why its motion should be granted. First, NJEDA argued that pursuant to the NJCLA – which is explicitly incorporated by reference in the Grant Agreements – Plaintiff's claims are barred because BB&B never provided written notice, as required by the NJCLA, of the claims asserted herein before this action was commenced.  Second, NJEDA argued that even if the Grant Agreements did not provide NJEDA with the protections of the NJCLA, it is undisputed that for calendar years 2021 and 2022, BB&B did not employ the minimum number of people required under the Grant Agreements, and

that under the terms of the Grant Agreements, this "Event of Default" results in BB&B forfeiting any tax credits that would otherwise be due thereunder.

At the January 14, 2025 oral argument, the Court indicated that it accepted NJEDA's first argument for judgment on the pleadings (based on the NJCLA, which was incorporated by reference in the Grant Agreements) and granted the motion for judgment on the pleadings, albeit permitting Plaintiff – *who asked for the very first time at the January 14 2025 oral argument* for – an opportunity to file a motion for leave to file an amended complaint in an effort to cure the defect in the Initial Complaint. *See* January 14, 2025 Transcript of Oral Argument ("Transcript") attached as Exhibit A to the Declaration of Eliott Berman, dated April 7, 2025 ("Berman Decl."), submitted herewith, at p.23, lines 16-19; p.35, lines 2-6; p.41, line 1; p.45, lines 13-20.

At the January 14, 2025 oral argument, the Court also stated it was not persuaded by NJEDA's second argument that inasmuch as it is undisputed that for calendar years 2021 and 2022 BB&B did not employ the minimum number of people required under the Grant Agreements, an "Event of Default" under the terms of the Grant Agreements occurred. The Court rejected this argument because under the terms of the Grant Agreements, no Event of Default could occur without NJEDA first providing at least thirty days beforehand a notice of such default, which NJEDA allegedly never did before it issued its August 7, 2023 letters to

BB&B that stated NJEDA was terminating the Agreements as of that date due to BB&B's defaults thereunder.  Berman Decl., Ex. A at p.24, lines 5-12; p.36, lines 13-15; p.41, lines 1-2.  But the Court permitted NJEDA to file a supplemental memorandum of law in an effort to further explain why it contends it was permitted under the Grant Agreements to withhold all tax credits not yet issued at the time of BB&B's default.  *Id.* at p.43, lines 16-18; p.45, lines 21-25.

On February 4, 2025, the Court issued an Order (D.E. 37) (The "February 4 Order") granting NJEDA's motion for judgment on the pleadings without prejudice to Plaintiff's right to file a motion for leave to file an amended Complaint. February 4 Order (D.E. 37) at ¶1.  Pursuant to the February 4 Order, "[i]n an effort to streamline future briefing regarding a motion for leave to file an amended complaint," Plaintiff would file on or before March 6, 2025, "a motion for leave to file an amended complaint with the proposed amended complaint and a supporting memorandum of law setting forth his position regarding why the Court should permit the filing of the amended complaint."  February 4 Order (D.E. 37) at ¶3(I)(A).  Accordingly, on March 6, 2025, Plaintiff filed the Motion.  *See* D.E. 41. The Motion attaches the Proposed Amended Complaint and fifteen exhibits (A through O) as Exhibit 1.  D.E. 41-1.  The Motion also attaches a Declaration of Benjamin Ojserkis in support of the Motion (the "Ojserkis Decl.").  D.E. 41-2.

In addition, pursuant to the February 4 Order, Defendant would file on or before March 6, 2025 "a Memorandum of Law setting forth its position regarding why the August 7, 2023 termination letters it issued (which are attached as Exhibit D to the [Initial] Complaint) were effective 'to withhold payment of all Grant payments not yet paid at the time of the default during such time as an Event or Events of Default remain uncured' as set forth in Section 15 of the parties' grant agreements at issue in this Adversary Proceeding." February 4 Order (D.E. 37) at ¶3(I)(B).    Accordingly, on March 6, 2025, NJEDA filed a Supplemental Memorandum of Law Regarding the August 7, 2023 Letters. *See* D.E. 42.

## STATEMENT OF FACTS

On or about December 4, 2006, NJEDA entered into two grant agreements, one with Christmas Trees Shops, Inc. ("CTS") (the "P17285 Grant Agreement") and one with BB&B (the "P17286 Grant Agreement").    The P17286 Grant Agreement and the P17285 Grant Agreement are attached as Exhibits A and B to the Proposed Amended Complaint (D.E. 41-1).[1]

---

[1]    As documented in NJEDA's motion for judgment on the pleadings (and not disputed by Plaintiff), inasmuch as in November 2020, CTS (the only grantee in the P17285 Grant Agreement) was sold to an unrelated entity that is not affiliated with BB&B, BB&B cannot (and no entity affiliated with BB&B can) assume any incentive payments and/or tax credits that would otherwise be due under the P17285 Grant Agreement, which was confirmed in a letter issued by NJEDA to BB&B on April 26, 2023. *See* Declaration of Susan Greitz in Support of NJEDA's Motion for Judgment on the Pleadings ("Greitz Decl.") (D.E. 24) at ¶4 and at Ex. 2 (D.E. 24-2).    Indeed, in the Initial Complaint (D.E. 1), Plaintiff admits that

On July 25, 2011, NJEDA entered into another grant agreement with the following entities: (i) BB&B, (ii) Bed Bath & Beyond of California Limited Liability Company, (iii) Bed Bath & Beyond Procurement Co., (iv) BBB Value Services Inc., (v) Buy Buy Baby Stores Inc., (vi) Harmon Stores Inc., and (vii) CTS (the "P36408 Grant Agreement"). The P36408 Grant Agreement is attached to the Proposed Amended Complaint at Exhibit C. (The P17285 Grant Agreement, the P17286 Grant Agreement, and the P36408 Grant Agreements are collectively referred to as the "Grant Agreements.")

---

"Christmas Tree Shops, Inc. was sold by BBB on November 12, 2020 and is therefore not a debtor in the bankruptcy case." D.E. 1 at p.4, n.3; *see also* Berman Decl. Ex. B [Redlined version of Proposed Amended Complaint in comparison to Initial Complaint] at p.4. While the Proposed Amended Complaint no longer includes this admission contained in footnote 3 of the Initial Complaint, even the Proposed Amended Complaint admits CTS "*was formerly* a wholly owned subsidiary of BBB." Proposed Amended Complaint at ¶15 (emphasis added). Accordingly, Plaintiff has no standing to assert a claim on behalf of CTS with respect to the P17285 Grant Agreement and his assertions regarding alleged tax credits owed to CTS thereunder (*see*, *e.g.*, Proposed Amended Complaint at ¶¶29-37) are completely irrelevant to Plaintiff's claims. Thus, NJEDA will focus on the Grant Agreements to which BB&B (or its current affiliates) are parties (namely, the P17286 Grant Agreement and the P36408 Grant Agreement discussed *infra*). In any event, the provisions in the P17285 Grant Agreement are, for the most part, identical to the P17286 Grant Agreement. *Compare* Proposed Amended Complaint Exhibit A with Exhibit B. The only differences between these two agreements are: (a) the names of the Grantee, (b) the notice provision (Section 23E), (c) the signatories, and (d) the exhibits. *Compare* Proposed Amended Complaint Ex. A with Ex. B. It also bears noting that, as indicated *infra*, there are cross-default provisions in all of the Grant Agreements, such that a default under any one of the agreements constitutes a default under the others.

As set forth in the Grant Agreements, and pursuant to the Business Employment Incentive Program Act, N.J.S.A. 34:1B-120 *et seq.* (the "BEIP Act"), the State of New Jersey provides grants to the grantees under the conditions set forth in those agreements and pursuant to the BEIP Act.  Under these Grant Agreements and pursuant to the BEIP Act, in order to obtain benefits under the Grant Agreements, the grantees must satisfy detailed conditions in connection with fostering job creation in the State of New Jersey – both with respect to (a) maintaining a certain number of full-time existing employees and annually adding a minimum of additional full-time employees, and (b) timely submitting to NJEDA detailed reporting requirements in connection thereto.  *See* Proposed Amended Complaint at Exhibits A, B, C.

These conditions must be met for fifteen years (the "Commitment Duration" as defined in the Grant Agreements) beginning from the Eligibility Determination Date as defined therein.  *See* Proposed Amended Complaint Ex. A at p.3; Ex. B at p.3; Ex. C at p.2.  The Eligibility Determination Date for the P17286 Grant Agreement was October 18, 2009, and thus the Commitment Duration would end on October 18, 2024.  Motion (D.E. 41) at 18; *see also* Greitz Decl. (D.E. 24) at ¶8. The Eligibility Determination Date for the P36408 Grant Agreement was

November 15, 2011, and thus the Commitment Duration would end on November

15, 2026.  Motion (D.E. 41) at 18; *see also* Greitz Decl. (D.E. 24) at ¶9.[2]

Section 3 of the Grant Agreements contains detailed annual reporting

requirements of the grantees under those agreements.  *See* Proposed Amended

Complaint Ex. A at §3; Ex. B at §3; Ex. C at §3.

Sections 4E and 4F of the Grant Agreements contain "Conditions to Grant"

and "Conditions Subsequent," and state as follows:

E.    Conditions To Grant. The obligation of Grantor to make the Grant
Payment with respect to each and every Grant Year, and the right of Grantee
to receive and retain same, shall be conditional upon satisfaction of each of
the following conditions:

1.  The Legislature has appropriated monies for the Grant with respect
to such Grant Year or the Grantor has issued bonds pursuant to the Act;
2.  The State Treasurer has certified the amount of the Withholdings
for such Grant Year, as required by Section 10 of the Act;
3.  No Events of Default have occurred and remain uncured, unless all
such defaults have been expressly waived by Grantor in writing, in its sole
discretion;
4.  Grantee has delivered to Grantor the Certification of Compliance;
and,

---

[2]    Plaintiff states that "[t]he BEIP Debtors do not know what the date the
NJEDA considers to be the Eligibility Date for the CTS [P17285 Grant]
Agreement" but assumes it is similar to the P17286 Grant Agreement (as both the
P17285 Grant Agreement and the P17286 Grant Agreement were entered into on
the same day – December 4, 2006).  But as indicated *supra* (note 1), BB&B and
Plaintiff have no standing to pursue claims on behalf of CTS, which has not been
affiliated with BB&B since November 2020.  In addition, Plaintiff does not allege
in his Proposed Amended Complaint that BB&B maintained the requisite number
of jobs required under any of the Grant Agreements in 2021 or 2022.  *See* Proposed
Amended Complaint at ¶27.

5. No demand has been made by Grantor for recapture of any Grant Payment for any previous Grant Year.

F.     Conditions Subsequent. The entitlement of Grantee to retain any Grant Payment previously received by it hereunder with respect to each and every Grant Year shall be conditional upon the continuous compliance by it with the Minimum Eligibility Threshold made by Grantee during the remainder of the Commitment Duration, unless expressly waived in writing by Grantor.

Proposed Amended Complaint Ex. A at §4E-F; Ex. B at §4E-F; Ex. C at §4E-F.

Section 6 of the Grant Agreements contains the following "Covenants of

Grantee" and states as follows:

6.     <u>Covenants of Grantee.</u>  Grantee covenants and agrees that:
A.     It shall meet and satisfy the Minimum Eligibility Threshold no later than the expiration of the Base Years and continue to satisfy the Minimum Eligibility Threshold at all times up to the expiration of the Commitment Duration;
B.     It shall maintain at least 80% of the Base Employment Number at all times up to the expiration of the Commitment Duration. The Grantor shall apply any job creation above the New Employment Commitment at the Project against any losses in the Base Employment Number when determining whether Grantee has fallen below 80 percent of the Base Employment Number.
C.     The Grantee shall maintain a net increase of employees at the Project at all times up to the expiration of the Commitment Duration. Any reductions in the employment level of the non-eligible employees that existed prior to approval of the Grant, must be deducted from the amount of New Employees in Eligible Positions for each year of the Grant Term.
D.     Grantee shall at all times during the Base Years and during the Commitment Duration satisfy all eligibility criteria under the Act and Regulations upon which Grantor relied in determining to make the Grant.

Proposed Amended Complaint Ex. A at §6A-D; Ex. B at §6A-D; Ex. C at §6A-D.

Accordingly, a covenant of BB&B under the Grant Agreements was that the

grantees under each agreement must "maintain at least 80% of the Base

12

Employment Number at all times up to the expiration of the Commitment Duration." Proposed Amended Complaint Ex. A at §6B; Ex. B at §6B; Ex. C at §6B. The Base Employment Number for the P17286 Grant Agreement was 2,600, such that 80% of the Base Employment Number is 2,080. Greitz Decl. (D.E. 24) ¶10 and Ex. 4 (D.E.24-4).[3] The Base Employment Number for the P36408 Grant Agreement was 2,440, such that 80% of the Base Employment Number is 1,952. Proposed Amended Complaint Ex. C at Exhibit A (within Ex. C); *see also* Proposed Amended Complaint ¶19 (discussing "creation of a minimum of 2,440 new jobs in New Jersey" for the P36408 Grant Agreement).

Notably, the P36408 Grant Agreement contains the following additional covenant in Section 6 of that Agreement:

> G.    It is specifically understood and agreed that this Grant is cross-defaulted with any existing assistance and any new assistance provided by the Authority to the Recipient and/or any of its subsidiaries.

Proposed Amended Complaint Ex. C at §6G. Accordingly, under the cross-default provision in Section 6G of the P36408 Grant Agreement, any default under the

---

[3]    While Exhibit A to the original December 4, 2006 P17286 Grant Agreement (Proposed Amended Complaint Ex. A) established the base employment number for this grant at 437, that number was later changed to 2,600 per the letter from BB&B to NJEDA that is attached at Exhibit 4 to the Greitz Declaration (D.E. 24-4). *See also* Proposed Amended Complaint ¶13 (discussing "creation of a minimum of 2,660 [sic] new jobs in New Jersey" for the P17286 Grant Agreement).

P17286 Grant Agreement would constitute a default under the P36408 Grant Agreement.

Section 14 of the P17286 Grant Agreement sets forth what constitutes an "Event of Default" under that agreement, including the following:

14. <u>Default</u>. Any one or more of the following shall constitute an event of default ("Event of Default") if the default is not cured within thirty (30) days after written notice of the default, provided, however, that said thirty (30) day period shall be extended an additional ninety (90) days if Grantee commences to cure the default within said thirty (30) day period and is diligently proceeding to cure the same.

A.      If the Minimum Eligibility Threshold[4] is maintained at none of the Project locations listed on Exhibit A for the Commitment Duration; provided that no Grant Payments shall be due or paid for any location that falls below the Minimum Eligibility Threshold requirement for that Project location;

B.      If Grantee fails to maintain 80% of the Base Employment Commitment;

C.      If Grantee has breached or failed to perform any other covenant or promise under this Agreement, except in the event the Grantee fails to maintain the New Employment Commitment which shall be subject to the provisions of Section 4B;

. . .

F.      The failure of Grantee to timely submit the documents, materials, and information required to be submitted by this Agreement.

. . .

H.      If any Event of Default, as defined hereunder, has occurred and remains uncured under any other agreement entered into between Grantor and Grantee or under any PEO Agreement relating to the BEIP Grant.

---

[4]      The Minimum Eligibility Threshold referenced in Section 14A in all Grant Agreements is 25 full-time employees. *See* Proposed Amended Complaint Ex. A at p.5 (definition of "Minimum Eligibility Threshold") and at Ex. A; Ex. B at p.5 (definition of "Minimum Eligibility Threshold") and at Ex. A; Ex. C at p.3 (definition of "Minimum Eligibility Threshold") and at Ex. A.

Proposed Amended Complaint Exhibit A at §14.

Accordingly, under Section 14H of the P17286 Grant Agreement, an Event of Default that remains uncured under the P36408 Grant Agreement would constitute an Event of Default of the P17286 Grant Agreement. Proposed Amended Complaint Ex. A at §14H.[5]  *See also* Greitz Decl. (D.E. 24) at ¶11.

These Events of Default also appear in the P36408 Grant Agreement[6] with one exception.  Section 14B of the P36408 Grant Agreement states as follows:

> B.     If the number of employees employed in New Jersey by Grantee and its affiliates excluding New Employees under the Grant falls below 80% of the Base Employment Number; provided that the Grantor shall apply any job creation at the Project above the New Employment Commitment, or at the request of the Grantee, the Minimum Eligibility Threshold, against any losses in the Base Employment Number when determining whether employment has fallen below 80% of the Base Employment Number; and provided further that no New Employees included in determining 80% of the Base Employment Number shall be included for payment under the Grant.

Proposed Amended Complaint Ex. C at §14B.  In addition, Section 14 of the P36408 Grant Agreement contains the following provision that is not in Section 14 of the P17286 Grant Agreement:

> K.     If the Grantee is in default under any existing or future assistance provided by Grantor to Grantee and/or any of its subsidiaries, including

---

[5]     The same is true with respect to the P17285 Grant Agreement.  *See* Proposed Amended Complaint Exhibit B at Section 14H.

[6]     Accordingly, under Section 14H of the P36408 Grant Agreement, an Event of Default that remains uncured under the P17286 Grant Agreement would constitute an Event of Default of the P36408 Grant Agreement.  *See* Proposed Amended Complaint Ex. C at §14H.  *See also* Greitz Decl. (D.E. 24) at ¶11

but not limited to, entities that may not be related to Grantee and/or any of its subsidiaries, but contain common principals.

Proposed Amended Complaint Ex. C at §14K. Accordingly, under Section 14K of the P36408 Grant Agreement, a default by BB&B under the P17286 Grant Agreement would constitute an Event of Default under the P36408 Grant Agreement. Proposed Amended Complaint Ex. C at §14K. *See also* Greitz Decl. (D.E. 24) at ¶11.

Section 15 of the Grant Agreements sets forth the "Remedies Upon Default" and states in pertinent part as follows:

15.    <u>Remedies Upon Default.</u> Upon the existence of any Event or Events of Default, the Grantor may, in its sole and absolute discretion, do any of the following, alone or in combination, after having first given Grantee notice and opportunity to cure the default in accordance with Paragraph 14 hereof:
A.    For Events of Default pursuant to Sections 14(A) through 14(H):
. . . .
(3)    withhold payment of all Grant payments not yet paid at the time of the default during such time as an Event or Events of Default remain uncured;
(4)    terminate the agreement; and
(5)    take any other action legally available to it;
. . . .

Proposed Amended Complaint Ex. A at §15; Ex. B at §15; Ex. C at §15. Section 15B of the P36408 Grant Agreement contains the following additional provision regarding Remedies Upon Default":

B.    For Events of Default pursuant to Sections 14(I) through 14(K):
(1)    at the Grantor's discretion, any remedy listed above in subsection A(1) through (5); and

> (2)    require the Grantee to repay the entire amount of the Grant
> previously paid to Grantee under this Agreement, plus interest and any
> cost of collection;

Proposed Amended Complaint Ex. C at §15B.  Accordingly, under Section 15B of

the P36408 Grant Agreement, a default under the P17286 Grant Agreement

(pursuant to Section 14K of the P36408 Grant Agreement) would also allow

NJEDA to terminate the P36408 Grant Agreement, withhold any payment not yet

made under that agreement, and require BB&B to repay amounts previously

received.  Proposed Amended Complaint Ex. C at §15B.

Section 15D of the Grant Agreements states as follows: "The Grantor's

rights under this Section 15 shall survive termination of the Agreement."

Proposed Amended Complaint Ex. A at §15D; Ex. B at §15D; Ex. C at §15D.

Section 17 of the Grant Agreements states as follows:

> 17.    <u>Forbearance Not a Waiver.</u> No act of forbearance or failure to insist on
> the prompt performance by the Grantee of its obligations pursuant to this
> Agreement, either express or implied, shall be construed as a waiver by the
> Grantor of any of its rights hereunder. In the event that any provision of this
> Agreement should be breached by Grantee and the breach may thereafter be
> waived by Grantor, such waiver shall be limited to the particular breach
> waived by Grantor and shall not be deemed to waive any other breach.

Proposed Amended Complaint Ex. A at §17; Ex. B at §17; Ex. C at §17.

Section 23H of the Grant Agreements states as follows:

> H. Contractual Liability Act. The rights and remedies of the Grantee under
> this Agreement shall be subject to the New Jersey Contractual Liability
> Act, <u>N.J.S.A.</u> 59:13-1 <u>et seq.,</u> the provisions of which are hereby
> incorporated herein by reference.

Proposed Amended Complaint Ex. A at §23H; Ex. B at §23H; Ex. C at §23H.

The Grant Agreements were each amended on or about June 9, 2016 (the "June 9, 2016 Amendments"), to reflect the fact that the grants that were to be awarded by NJEDA were being converted to a tax credit against the tax liability otherwise due pursuant to Section 5 of P.L. 1945 c. 162 (C.54:10A-5). The June 9, 2016 Amendments to the Grant Agreements are attached to the Proposed Amended Complaint at Exhibits D, E, and F.

On November 12, 2020, CTS was sold by BB&B. Initial Complaint (D.E. 1) at note 3; *see also* Proposed Amended Complaint at ¶15 (noting that CTS was "formerly a wholly owned subsidiary of BBB"). As such, BB&B cannot assume the P17285 Grant Agreement and cannot receive any tax credits that would otherwise be due thereunder. *See also* Greitz Decl. Exhibit 2 (D.E. 24-2); Proposed Amended Complaint Ex. B at §13 ("Grantee may not assign its interests in this Agreement to another company, other than those entities listed above as Grantee, without the prior written consent of Grantor.").

On or about February 6, 2023, the parties to the P36408 Grant Agreement entered into an amendment to the P36408 Grant Agreement. *See* Proposed Amended Complaint at ¶¶44, 53; *see also* Greitz Decl. Ex. 7 (D.E. 24-7).[7]

---

[7]      On January 18, 2023, and on March 13, 2023, NJEDA issued to BB&B two default notices regarding missing required information in the 2021 Annual Report

On or about August 7, 2023, NJEDA issued two letters to BB&B, one with respect to the P17286 Grant Agreement and one with respect to the P36408 Grant Agreement (collectively, the "August 7, 2023 Letters"). The August 7, 2023 Letters are attached to the Proposed Amended Complaint at Exhibit O.

As reflected in the August 7, 2023 Letters, pursuant to N.J.A.C. 19:31-10.6 (and pursuant to the P17286 Grant Agreement and the P36408 Grant Agreement as detailed above), based on the annual reports submitted by BB&B for 2021 and 2022, "the company fell below 80% of the base employment number and below the minimum number of eligible positions." Proposed Amended Complaint Ex O at p.1.[8]

---

for the P17286 Grant Agreement submitted to NJEDA by BB&B in connection with BB&B's obligations under that agreement. Greitz Decl. (D.E. 24) ¶14 and Ex. 8, 9. On December 7, 2002, and on March 28, 2023, NJEDA issued to BB&B two default notices regarding missing information in the 2021 Annual Report for the P36408 Grant Agreement submitted to NJEDA by BB&B in connection with BB&B's obligations under that agreement. Greitz Decl. (D.E. 24) ¶15 and Ex. 10, 11. Following the issuance of these default notices NJEDA had discussions with BB&B and its representative from Deloitte regarding defaults in connection with the P17286 Grant Agreement and the P36408 Grant Agreement. *See* Greitz Decl. (D.E. 24) ¶16. On July 10, 2023, NJEDA informed BB&B in writing that based on the grantees' failure to reach the minimum number of employees pursuant to these agreements for multiple years, NJEDA would be issuing termination letters with respect to those agreements. *Id.* Ex. 12.

[8]     As indicated *supra*, 80% of the base employment number for the P17286 Grant Agreement is 2,080 and 80% of the base employment number for P36408 is 1,952. As also indicated *supra*, the minimum number of eligible positions for both the P17286 Grant Agreement and the P36408 Grant Agreement is twenty-five.

As set forth in the August 7, 2023 Letters, inasmuch as BB&B failed to maintain the requisite number of jobs for both 2021 and 2022 with respect to both the P17286 Grant Agreement and the P36408 Grant Agreement, NJEDA wrote that it was terminating both agreements effective immediately (*i.e.*, August 7, 2023) and that, as set forth in those agreements, NJEDA would withhold all accrued but unpaid liabilities, and that the parties will have no further obligations to each other under the Agreements.  Proposed Amended Complaint Ex O at p.2.

After NJEDA issued the August 7, 2023 Letters, BB&B did not notify NJEDA in writing that it disputed the August 7, 2023 Letters, including the occurrence of the defaults and the statements therein that NJEDA would withhold all accrued but unpaid liabilities, and that the parties will have no further obligations to each other under the Agreements.   Greitz Decl. (D.E. 24) ¶18. Indeed, the first *written statement* received by NJEDA from BB&B (or Plaintiff) that alleged that NJEDA has breached its obligations under the Grant Agreements by withholding issuance of tax credits was the Initial Complaint filed herein by Plaintiff against NJEDA in June 2024.  *Id.*[9]

---

[9]     To be sure, in his Proposed Amended Complaint, Plaintiff alleges that the "BEIP Debtors made extensive efforts to have NJEDA pay the grants and award the tax credits for years 2011-2020," including sending letters to the "president of the New Jersey Senate and to then-Governor Chris Christie regarding NJEDA's failure to honor its commitments under the Agreements."  Proposed Amended Complaint at ¶49.  But Plaintiff does not claim that any *written* notice was ever sent *to NJEDA* of "any situation or occurrence which may potentially result in the

The Proposed Amended Complaint, like the Initial Complaint, asserts a claim for breach of contract under the Grant Agreements for NJEDA's alleged failure to fulfill its obligations thereunder.  The Proposed Amended Complaint, like the Initial Complaint, also asserts a claim for turnover of property (pursuant to 11 U.S.C. §542) seeking the identical amount of damages as the breach of contract claim, alleging that NJEDA owes, and must turnover, this same amount to BB&B due to NJEDA's alleged breaches under the Grant Agreements.

In the Proposed Amended Complaint, like the Initial Complaint, Plaintiff does not allege that BB&B fulfilled its obligations under the Grant Agreements in 2021 and subsequent years but Plaintiff does allege that BB&B did meet its "job creation and other requirements of the [Grant] Agreements for years 2007 through at least 2020."  Proposed Amended Complaint at ¶27; *see also* Initial Complaint at ¶24.

Plaintiff now files this Motion to recover what he contends is all the tax credits that BB&B is allegedly owed for 2020 and previous years, which, in

submission of a claim" against the NJEDA.  <u>N.J.S.A.</u> §59:13-5.  Indeed, Plaintiff alleges that "[a]ttempts to obtain the certified, but not paid, tax credits began in earnest in early 2023."  Proposed Amended Complaint at ¶51; *see also* Ojserkis Decl. (D.E. 41-2) at ¶¶2-8.  Those attempts included an alleged "call" on February 6, 2023, a "meeting" on June 8, 2023, and conference calls on December 11, 2023, and February 29, 2024.  Proposed Amended Complaint at ¶¶52, 54, 59, 60.  While Plaintiff attaches to his Proposed Amended Complaint numerous letters and emails *from NJEDA* (*see* Exhibits G, H, I, J, K, L, M, N) that were not attached to his Initial Complaint, he does not attach or reference in his Proposed Amended Complaint any written notice of claim *to NJEDA*.

Plaintiff's words, "were owed long before the year 2021" and "were overdue to be paid."  Motion at 16.

## ARGUMENT

## Legal Standard

Under Rule 7015 of the Federal Rules of Bankruptcy Procedure, Rule 15 of the Federal Rules of Civil Procedure applies to adversary proceedings.  Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a).  Courts, including the U.S. Supreme Court, have held that futility of amendment as well as undue delay or prejudice are reasons that leave to amend should be denied.  *See*, *e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *CBA Env't Servs. v. Toll Bros.*, 403 F. Supp.3d 403, 410 (D.N.J. 2019).  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."  *In re Burlington*, 114 F.3d at 1434.  "In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."  *Id.*

## I.    THE NEW JERSEY CONTRACTUAL LIABILITY ACT BARS THIS ACTION.

As set forth above, the Grant Agreements state that "[t]he rights and remedies of the Grantee under this Agreement shall be subject to the New Jersey Contractual Liability Act, N.J.S.A. 59:13-1 et seq., the provisions of which are hereby incorporated

herein by reference."  Proposed Amended Complaint Ex. A at §23H; Ex. B at §23H;

Ex. C at §23H.

Section 5 of the NJCLA provides as follows:

"It shall be the responsibility of parties contracting with the State **to promptly notify the State in writing** of any situation or occurrence which may potentially result in the submission of a claim against the State. **Except as otherwise provided in section 6, no notice of claim for breach of contract, either express or implied in fact, shall be filed with the contracting agency later than 90 days after the accrual of such claim.** A notice of claim shall include the following information: the name of the claimant, the nature of the claim, specific reasons for making the claim, and the total dollar amount of the claim if known. After the expiration of 90 days from the date the notice of claim is received by the contracting agency, the claimant may file suit in a court of competent jurisdiction of the State of New Jersey.

**In all contract claims against the State, the claimant shall be forever barred from recovering against the State if:**

**a. he fails to notify the appropriate contracting agency within 90 days of accrual of his claim except as otherwise provided in section 6 hereof**; or …'

N.J.S.A. §59:13-5 (emphasis added).

Section 6 of the NJCLA provides as follows:

"A claimant who fails to file notice of his claim within 90 days as provided in section 6 of this chapter, may, in the discretion of a judge of the Superior Court of the State of New Jersey, be permitted to file such notice at any time **within 1 year after the accrual of his claim** provided that the State has not been substantially prejudiced thereby. Application to a judge of the superior court for permission to file a late notice of claim shall be made upon motion based upon affidavits setting forth sufficient reason for the failure to file his notice of claim within the period of time prescribed by section 6 of this chapter.

N.J.S.A. §59:13-6 (emphasis added).

Section 2 of the NJCLA states "'[a]ccrual of claim' shall mean the date on which the claim arose and shall not be affected by the notice provisions contained herein." N.J.S.A. §59:13-2.

## A. Plaintiff and BBB Failed to Provide Written Notice to Defendant as Required by the NJCLA.

Here, despite the fact that the claim asserted by Plaintiff arose no later than September 6, 2023 – thirty days after the August 7, 2023 Letters notifying BB&B of its defaults were issued to BB&B – BB&B (and Plaintiff) never "notif[ied NJEDA] in writing of any situation or occurrence which may potentially result in the submission of a claim against [NJEDA]" within ninety days of September 6, 2023.  N.J.S.A. §59:13-5.  **Indeed, both the Initial Complaint and the Proposed Amended Complaint do not allege otherwise.**  In fact, the first notification in writing by BB&B or Plaintiff of any situation or occurrence that may potentially result in the submission of a claim against NJEDA was the filing of this action in June 2024.

Inasmuch as three months passed since September 6, 2023 without a written notice of claim being sent to NJEDA by BB&B or Plaintiff, Plaintiff's claims in the Proposed Amended Complaint are legally deficient.   N.J.S.A. §59:13-5. Moreover, inasmuch as more than a year has elapsed since the latest possible accrual date of Plaintiff's claims, Plaintiff cannot now take advantage of the safe

harbor provided in Section 6 of the NJCLA.  Accordingly, the Motion should be denied due to the futility of the proposed amendment and this case should be dismissed with prejudice.[10]

Indeed, at the January 14, 2025 oral argument regarding NJEDA's Motion for Judgment on the Pleadings, the Court made it quite clear to Plaintiff's counsel that in light of Section 23H of the Grant Agreements, the Court would grant NJEDA's motion for judgment on the pleadings.  *See* Berman Decl., Ex. A [Transcript] at p.23, lines 16-19; p.35, lines 2-6; p.41, line 1; p.45, lines 13-20.  But at the request of Plaintiff's counsel – made for the very first time at the January 14, 2025 oral argument (*id.* at p.11, lines 19-20) – Plaintiff would be given an opportunity to move for leave to file an amended pleading, which needs "to be supported by a brief that says why the amendments make a difference."  *Id.* at p.45, lines 19-20.  At the oral argument, Plaintiff's counsel argued that via an amended pleading Plaintiff can sufficiently allege that BB&B "substantially complied" with the notice provision of the NJCLA.  *Id.* at p.11, lines 17-20.

The Motion sets forth two reasons why Plaintiff contends that the NJCLA does not bar this action.

---

[10]    To be sure, Plaintiff filed his claim on June 3, 2024, within a year of September 6, 2023, but the statute and case law is clear that a claimant must provide notification of a potential claim *before* filing a claim in court.  <u>N.J.S.A.</u> §59:13-5; *County of Hudson v. State, Dep't of Corrections*, 208 N.J. 1, 23 (2011).

First, Plaintiff repeats the argument he made previously – that since NJEDA is statutorily authorized to sue and be sued it cannot seek the protections of the NJCLA.  Motion at 9-11.  But as set forth in NJEDA's previous memoranda of law (D.E. 22-1, 31), the provisions of the NJCLA are explicitly incorporated by reference in Section 23H of the Grant Agreements and if BB&B's rights and remedies were not subject to the NJCLA, Section 23H of the Grant Agreements would be rendered a nullity.  In response, Plaintiff argues that "the incorporation is not rendered a nullity because it actually clarifies that the CLA does *not* apply, which would not have been as certain had it not been incorporated into the Agreements."  Motion at 11 (emphasis added).

Plaintiff basically argues that had there been no reference to the NJCLA in the Grant Agreements, the parties may have thought that BB&B's rights are subject to the NJCLA (notwithstanding the fact that NJEDA is statutorily authorized to sue and be sued), and that NJEDA (which allegedly drafted the Grant Agreements) inserted Section 23H to make it clear that since NJEDA is statutorily authorized to sue and be sued, BB&B's rights and remedies are *not l*imited by the NJCLA.  This argument makes no sense.  It is devoid of logic to contend that the parties agreed to insert Section 23H of the Agreement in an effort to make clear that rights and remedies of BB&B are *not* limited by the provisions of the NJCLA.  If, indeed, the parties were in agreement that BB&B's rights and remedies were not to be limited

by the provisions of the NJCLA, Section 23H should not have been included in the Grant Agreements.

Plaintiff's second argument is that BB&B substantially complied with the NJCLA's notice requirement. Motion at 11-16. Plaintiff cites several cases, some dealing with the NJCLA and some dealing with the New Jersey Tort Claims Act, in support of his contention that "substantial compliance" with the notice requirement is sufficient. Plaintiff's argument is without merit.

One can see the fallacy in Plaintiff's argument by reviewing the second sentence in Plaintiff's five-page "substantial compliance" section, where Plaintiff writes that "Section 59:13-5 of the CLA requires that parties contracting with the State notify the State of any 'situation or occurrence which may potentially result in the submission of a claim against the State' within 90 days of the accrual of the claim." Motion at 11 (quoting N.J.S.A. §59:13-5). But Plaintiff omits to mention that Section 59:13-5 explicitly states that the required notification must be "*in writing*." NJCLA at §59:13-5 (emphasis added). Indeed, *every* case cited by Plaintiff where a court held that substantial compliance was sufficient dealt with a *written* notice. NJEDA is aware of no case – and Plaintiff does not supply any – holding that substantial compliance with the written notice requirement in the NJCLA can be accomplished without a written notice.

27

In addition, in *County of Hudson v. State Dep't of Corrections*, 208 N.J. 1 (2011), the New Jersey Supreme Court discusses the doctrine of substantial compliance in connection with the written notice requirement under the provisions of the NJCLA. *Id.* at 21-22. In doing so, the Court notes that in addressing the question of substantial compliance with respect to the NJCLA, "we deem it prudent to look to the manner in which similar arguments raised in the context of the corollary Tort Claims Act have been considered. That more familiar statute has notice provisions which serve purposes like those that underlie the notice provision in the Contractual Liability Act." *Id.* at 22.

Both the NJCLA as well as the New Jersey Tort Claims Act require a "written" notice of claim before a plaintiff can file a complaint. <u>N.J.S.A.</u> §59:13-5; <u>N.J.S.A.</u> §59:8-5. In connection with the Tort Claims Act, courts (including the New Jersey Supreme Court) have repeatedly held that one cannot achieve "substantial compliance" with the notice requirement if the notice was not provided in writing. For example, in *D.D. v. University of Med. and Dentistry of NJ*, 213 N.J. 130 (2013), the New Jersey Supreme Court held that the doctrine of "substantial compliance" cannot relieve a plaintiff of the written notice requirement and that the "doctrine of substantial compliance … has been limited carefully to those situations in which the notice, although both timely and in writing, had technical deficiencies." *Id.* at 159. The Court in *D.D.* explicitly stated

that "there is no basis to extend the substantial compliance theory so as to relieve plaintiffs of their obligation to comply with the statute's requirement that they file a notice, and that it be in writing." *Id.* at 159-160. The Supreme Court in *D.D.* (*id.*) cited with approval the Appellate Division holding in *Velez v. City of Jersey City*, 358 N.J. Super. 224 (App. Div. 2003), that "it is elementary that at a very minimum, a notice of claim under the [Tort Claims] Act must be in writing" and that "[o]ral notice, even where it contains the elements required ..., does not constitute substantial compliance." *Id.* at 238.

While Plaintiff alleges that BB&B's or Plaintiff's representatives had phone conversations with NJEDA in 2023 and 2024 regarding Plaintiff's contention that BB&B should receive tax credits, Plaintiff's failure to allege that NJEDA was provided written notice dooms Plaintiff's claim under the NJCLA. Indeed, in *Dixon v. JPay, Inc.*, No. A-4498-19, 2022 N.J. Super. Unpub. LEXIS 806 (App. Div. May 13, 2022) (cited by Plaintiff at p.12 of his Motion and attached as Exhibit C to the Berman Decl.), the court affirmed the trial court's dismissal of the plaintiff's contract claim because the "plaintiff failed to 'present his claims as required under the New Jersey [Contractual Liability Act]. Plaintiff has neither alleged or otherwise shown he filed any notice of contract claim as required.'" *Id.* at *9-*10. The court in *JPay* further held that although "Plaintiff maintains he did file a proper notice," he "fail[ed] to provide proof of any such notice or when it

was filed." *Id.* at *10.  As set forth above, while Plaintiff attaches numerous new

letters and emails to his Proposed Amended Complaint, none of them constitute a

notice of claim sent from BB&B or Plaintiff (or any of their representatives) to

NJEDA.

### B. Plaintiff Failed to Provide Any Notice Within Three Months of the Accrual of Its Claims as Required by the NJCLA.

Putting aside Plaintiff's failure to provide written notice as required by the

NJCLA, Plaintiff's claims are also defective because the alleged (oral) notice of

claim that was provided in early 2023 and 2024 was untimely.  As set forth above,

Section 2 of the NJCLA states "'[a]ccrual of claim' shall mean the date on which

the claim arose and shall not be affected by the notice provisions contained

herein." <u>N.J.S.A.</u> §59:13-2.  *According to Plaintiff*, while NJEDA may have had a

right to withhold issuance of tax credits for years 2021 and beyond due to BB&B's

failure to maintain the required number of employees in 2021 and 2022, NJEDA

breached its obligation to issue tax credits for many years before 2021.  *See*, *e.g.*,

Motion at 16 (BB&B was entitled to all credits through the end of calendar year

2020 and "[t]hese amounts for these years were owed long before the year 2021,

[and] were overdue to be paid.")  But even assuming, for purposes of the Motion,

that NJEDA breached its obligations to issue tax credits in one or more years

before 2021, Plaintiff cannot now assert a claim for such alleged breaches if BB&B

did not issue a notice of claim to NJEDA with respect to such alleged breaches within three months of their accrual.

As the court stated in *County of Hudson v. Dep't of Corrections*, No. A-3511-05T2, 2007 N.J. Super. Unpub. LEXIS 913 (App. Div. June 28, 2007) (attached as Exhibit D to the Berman Decl.), "[a] new claim accrues every time the State does not pay the correct amount." *Id.* at *6. Thus, according to the allegations in the Proposed Amended Complaint and pursuant to the requirements of the NJCLA, BB&B should have filed a notice of claim under the NJCLA within three months of each time NJEDA allegedly failed to deliver tax credits that it was allegedly obligated to deliver "long before the year 2021" (Motion at 16). But Plaintiff does not allege that any notice of claim – written or oral – was issued within three months (or a year) of these alleged breaches to issue tax credits. Accordingly, under the NJCLA, claims for these alleged breaches are also time-barred.

## II.   UNDER THE TERMS OF THE GRANT AGREEMENTS, DUE TO BB&B'S FAILURE TO MAINTAIN SUFFICIENT JOBS IN 2021 AND 2022, ALL PAYMENT OR CREDITS THAT WOULD OTHERWISE BE DUE ARE FORFEITED.

Plaintiff does not and cannot dispute the fact that BB&B failed to employ the minimum number of people under the Grant Agreements for calendar years 2021 and 2022, and that under the terms of the Grant Agreements – under Section 4E(3) and Section 15A(3) – when there is an "Event of Default," NJEDA has the right to withhold payments not yet paid (or tax credits not yet issued) at the time of

such default during such time an Event of Default remains uncured.  Yet, Plaintiff argues that notwithstanding these undisputed facts, no "Event of Default" concerning BB&B's failure to employ the minimum number of people in both 2021 and 2022 occurred because NJEDA never issued a notice of default that specified this particular default.  Motion at 7 (before issuance of August 7, 2023 Letters, "NJEDA had not previously provided written notice to the BEIP Debtors of their default under the Agreements for failing to maintain jobs.  Sections 14 and 15 of the Agreements require written notice of any default to be given and that default remedies can only be exercised by NJEDA if written notice was first provided").  As demonstrated below (and at further length in NJEDA's Supplemental Memorandum of Law Regarding the August 7, 2023 Letters (D.E. 42)), Plaintiff's argument is without merit for at least two reasons, each of which renders Plaintiff's claims legally deficient.

**A.  <u>The August 7, 2023 Letters Constitute Notice of Default.</u>**

Plaintiff's Proposed Amended Complaint (like the Initial Complaint) is premised on a red herring.  Plaintiff asserts that NJEDA did not have the authority to terminate the Grant Agreements on August 7, 2023, because before August 7, 2023, NJEDA did not first provide BB&B with a notice of default and then wait thirty days to declare an Event of Default as allegedly required under the

Agreement.[11]   Assuming, *arguendo*, that notice of default was necessary here (despite the fact that BB&B's failure to employ the minimum people required in 2021 and 2022 was incurable in 2023), Plaintiff cannot deny the fact that notice of default was provided to BB&B by NJEDA via the August 7, 2023 Letters.  *See* Proposed Amended Complaint Ex. O.

Those two letters clearly state that under each Grant Agreement, BB&B defaulted by not employing the minimum number of people required in 2021 and then again in 2022.  Accordingly, it is irrelevant whether NJEDA was permitted to terminate the Grant Agreements effective August 7, 2023.  At a minimum, thirty days after the August 7, 2023 Letters were issued by NJEDA to BB&B, namely September 6, 2023, NJEDA was fully within its rights under both Section 4E(3) and Section 15A(3) of the Grant Agreements to withhold issuance of all tax credits not yet issued at the time of the default during such time as the Events of Default remain uncured.  Proposed Amended Complaint Ex. A  at §§4E(3), 15A(3); Ex. B at §§4E(3), 15A(3); Ex. C at §§4E(3), 15A(3).[12]  It is undisputed that the default of

---

[11]    It is important to note that Plaintiff ignores the July 10, 2023 email communication from NJEDA to Anthony Szymelewicz, who was representing BB&B with regard to discussions with NJEDA concerning BB&B's defaults under the Grant Agreements, informing BB&B of its defaults thereunder for not employing the minimum number of people required for multiple years.  *See* Greitz Decl. Ex. 12 (D.E. 24-12).

[12]    NJEDA's termination of the Grant Agreements is irrelevant as a matter of law.  Whether NJEDA's termination was effective (a) on August 7, 2023, (b) thirty days later – on September 6, 2023 (*see*, *e.g.*, *Harry's Village, Inc. v. Egg Harbor*

not maintaining the minimum number of jobs required under the Grant Agreements in both 2021 and 2022 remained uncured as of September 6, 2023 and remains uncured today.   Indeed, this default cannot be cured.   Accordingly, Plaintiff's claims are defective as a matter of law.

## B. Due to the Incurable Nature of BB&B's Default, NJEDA Was Not Obligated to Provide a Notice of Default.

Putting aside all of the fatal flaws discussed *supra*, Plaintiff's claims are legally deficient for another independent reason.   Plaintiff's claims are based on the faulty premise that NJEDA was contractually obligated to first provide a written notice of default before an "Event of Default" can be established.   But case law – in and outside New Jersey – makes clear that a duty to provide a notice of default before termination is unnecessary, even when the non-breaching party has a contractual duty to provide such notice, if the default cannot be cured.

For example, in *Young Travelers Day Camps, Inc. v. Felsen*, 118 N.J. Super. 304 (D. Ct. 1972), the licensor terminated a license agreement without first providing five days written notice as required under the parties' contract.   The court held that notice was unnecessary to terminate the contract notwithstanding the contractual provision mandating a five-day notice.   *Id.* at 314-15.   The court

---

*Twp.*, 89 N.J. 576, 587 (1982) (when notice letter provides an effective date that is earlier than permissible, the effectiveness of letter will take hold when first permissible)), or (c) not at any time, NJEDA is still fully within its rights to withhold all tax credits under Sections 4E(3) and 15A(3) of the Grant Agreements as of September 6, 2023.

explained that the purpose of the notice was to provide the licensee the ability to cure the default, but inasmuch as the breach in that case was "irreparable" and "irremediable," no such notice was required.[13]  *Id.*

Similarly, the court in *Twin Crest Grp. v. Del. Valley Urology, LLC*, No. 10-6350, 2013 U.S. Dist. LEXIS 175036 (D.N.J. Dec. 12, 2013) (attached as Exhibit E to the Berman Decl.), denied a motion for summary judgment that was premised on a party's failure to first provide notice of a default under a contract despite a contractual provision requiring such notice first be provided before a suit for damages could be instituted.  One reason given by the court for denying the motion was that there was a factual question regarding whether such notice would have been futile because the breach was arguably "irreparable."  *Id.* at *30.  The *Twin Crest* court was clear that if notice would have been futile because the breach was indeed incurable, no such notice would be required, notwithstanding a contractual provision requiring such notice.[14]

---

[13]    The court in *Young Travelers* also held that the licensee's breach was material, but the court made clear that the reason it dispensed with the notice requirement was the fact that "[t]he breach was not merely material, it was irreparable." 118 N.J. Super. at 314.

[14]    To be sure, the *Twin Crest* court provided additional reasons for its denial of summary judgment, including the fact that it was unclear whether the contract required notice before the non-breaching party could sue for damages and whether a material breach excused the non-breaching party from first providing notice. *Twin Crest*, 2013 U.S. Dist. LEXIS 175036, at *20-*25.  But the court made clear that independent of those reasons, one need not fulfill a contractual requirement to provide notice of default if such notice would have been futile due to the fact that

Courts in other states, including, for example, New York and Pennsylvania, also hold that one need not comply with contractual provisions requiring notice of default when such defaults cannot be cured.  *See*, *e.g., East Empire Constr. Inc. v. Borough Constr. Grp. LLC*, 156 N.Y.S.3d 148, 152 (App. Div. 2021) ("notice to cure is not required where the breach is impossible to cure"); *Sea Tow Servs. Int'l v. Pontin*, 607 F. Supp.2d 378, 388 (E.D.N.Y. 2009) ("the Court finds, as a matter of law, that if the breach was incurable, plaintiff was under no obligation to adhere to the ten-day cure provision"); *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 599 Pa. 546, 564-65 (2009) ("in the event of an incurable breach, the non-breaching party may immediately terminate the agreement without following its notice and cure provisions").

Here, Plaintiff does not and cannot contend that BB&B's default of not employing the minimum number of people required in 2021 and 2022 under the Grant Agreements was curable.  Indeed, in his Opposition Memorandum (D.E. 30) to NJEDA's motion for judgment on the pleadings, Plaintiff wrote that "NJEDA may be correct that the failure to maintain a certain number of jobs in a particular

---

such default was incurable.  *Id.* at *28-*31.  Accordingly, while NJEDA respectfully submits that BB&B's failure to employ the minimum people required under the Grant Agreements in both 2021 and 2022 was a "material" breach as employing the minimum number of people required tends to "defeat the purpose" of the Grant Agreements (*id.* at *24), that analysis is unnecessary here because *Twin Crest* (and the same is true with respect to *Young Travelers*) makes clear that even if a breach was not material, if it was incurable, no notice of default would be necessary even if a contractual provision required such notice.

year cannot be cured in the following year." Plaintiff's Mem. of Law in Opp. to

Defendant's Motion for Judgment on the Pleadings (D.E. 30) at 13.  Accordingly,

NJEDA was under no obligation to first provide BB&B with a notice of default

before terminating the parties' Grant Agreements and withholding all payments

that would otherwise be due thereunder.[15]

In the last section of the Motion (pp.16-22), Plaintiff argues that

notwithstanding BB&B's defaults in 2021 and 2022, Plaintiff should still be able to

recover tax credits for years 2020 and earlier years as the "amounts for these years

were owed long before the year 2021."  Motion at 16.  But for numerous reasons,

Plaintiff's claims for such amounts are without merit.

Putting aside that those claims fail for two reasons under the NJCLA –

---

[15]     As set forth in its earlier briefs, NJEDA respectfully submits that there is an
additional reason why it was under no obligation to provide notice of default
before terminating the Grant Agreements and withholding payments that would
otherwise be due – namely that the obligation to provide notice of default under the
Grant Agreements is explicitly tied to providing BB&B with an opportunity to cure
such defaults.  *See* Proposed Amended Complaint Ex. A at §§14, 15; Ex. B at §§14,
15; Ex. C at §§14, 15.   Accordingly, based on general canons of contract
interpretation, including that contracts should not necessarily be read "literally" but
with "common sense" to effectuate the clear purposes of the contract, notice of
incurable breaches need not be provided under the Grant Agreements.  *See*, *e.g.*,
*Hardy ex rel. Dowdell v. Abdul-Matin*, 198 N.J. 95, 103 (2009) ("A basic principle
of contract interpretation is to read the document as a whole in a fair and common
sense manner."); *Porreca v. City of Millville*, 419 N.J. Super. 212, 233 (App. Div.
2011) (same (quoting *Hardy*)); *Borough of Princeton v. Board of Chosen
Freeholders of Cnty. of Mercer*, 333 N.J. Super. 310, 325 (App. Div. 2000)
("Literalism must give way to context."); *Cumberland Cnty. Improvement Auth. v.
GSP Recycling Co.*, 358 N.J. Super. 484, 497 (App. Div. 2003) (same (quoting
*Borough of Princeton*)).

failure to provide the necessary *written* notice of claim and failure to provide any

notice of claim within three months of the accrual of such claims – Section 15A(3)

of the Grant Agreements is unambiguous that even if NJEDA failed to pay amounts

that were due "long before the year 2021" they are forfeited due to the Events of

Default that have remained uncured.

Accordingly, even crediting the allegation that BB&B was owed tax credits

for years prior to 2021, the clear provisions of the Grant Agreements state that such

tax credits are forfeited.[16]

## **CONCLUSION**

For all the foregoing reasons, including the following four independent

reasons:

(a) Plaintiff's and BB&B's failure to provide a written notice of claim as required

by the NJCLA, the provisions of which have been incorporated by reference in

the Grant Agreements,

---

[16]     In his Memorandum, Plaintiff argues that had NJEDA issued BB&B tax credits in the years before 2021, BB&B may have been able to retain a portion of such credits (Motion at 18-20) notwithstanding BB&B's defaults for years 2021 and 2022.  Plaintiff's argument is irrelevant and without merit.  This litigation is about whether BB&B or Plaintiff has a claim for tax credits not previously issued. Accordingly, the relevant section of the Grant Agreements is Section 15A(3), and under that provision Plaintiff has no claim to receive anything further.  In addition, under Section 4E(3), NJEDA is under no obligation to make any payment or issue any tax credit while an Event of Default remains uncured, which is the case here. It also bears mentioning that the Court previously rejected Plaintiff's "forfeiture arguments."  Berman Decl. Ex. A [Transcript] at page 41, lines 3-18.

(b) Plaintiff's and BB&B's failure to provide any notice of claim within three

months of the accrual of Plaintiff's claims as required by the NJCLA, the

provisions of which have been incorporated by reference in the Grant

Agreements,

(c) Section 4E(3) of the Grant Agreements, which provides that BB&B cannot

recover any grant payment (or tax credit) while an Event of Default[17] (such as

BB&B's failure to employ the minimum number of people required in both

2021 and 2022) remains uncured, and

(d) Section 15A(3) of the Grant Agreements, which provides that NJEDA may

withhold all credits that would otherwise be due as of the time of the default

during such time as an Event of Default (such as BB&B's failure to employ the

minimum number of people required in both 2021 and 2022) remains uncured,

Plaintiff's Motion for Leave to File Amended Complaint should be denied and this

action should be dismissed with prejudice.

---

[17]    To the extent Plaintiff argues no "Event of Default" has occurred because written notice was not provided by NJEDA to BB&B regarding BB&B's failure to employ the minimum number of people required under the Grant Agreements in 2021 and 2022, Plaintiff ignores that (a) the August 7, 2023 Letters constitute such notice of default, such that there can be no question that at least as of September 6, 2023, an Event of Default has occurred, and that (b) under case law, both in and outside New Jersey, no notice of default need be given when the default is incurable, as is the case here.

|                          | **McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP** |
|--------------------------|--------------------------------------------------|

Dated: April 7, 2025

/s/ Jeffrey Bernstein

Jeffrey Bernstein, Esq.
Eliott Berman, Esq. (admitted *pro hac vice*)
570 Broad Street, Suite 1401
Newark, NJ 07102
Telephone: (973) 565-2183
Facsimile: (973) 622-5314
E-mail: jbernstein@mdmc-law.com
         eberman@mdmc-law.com

*Counsel to New Jersey Economic Development Authority*